[S. F. No. 5329.  In Bank.—January 3, 1910.]

D. C. CROCKETT, Petitioner, v. C. W. MATHEWS, Auditor of Mendocino County, Respondent.

COUNTY OFFICERS — CODIFYING ACT OF MARCH 18, 1907 — CHANGE OF COMPENSATION.—*Smith* v. *Mathews,* 155 Cal. 752, [103 Pac. 199], approved, to the effect that the provisions of the act of March 18, 1907 (Stats. 1907, p. 354), by which the county Government Act, amended in many particulars and revised, was incorporated as a part of the Political Code, is not to be construed as showing a legislative intent that the changes in salaries and compensation thereby made as to many officers should affect incumbents.

ID.—REDUCTION OF COMPENSATION—CHANGE IN METHOD OF COMPENSA-
TION.—The legislature has the power either to reduce the compen-
sation of any county or township officer after his election or during
his term of office, or to substitute a different method of compensa-
tion, provided his compensation is not thereby increased.   The pro-
hibition of section 9 of article XI of the constitution refers only to
an increase of compensation.

ID.—SUBSTITUTION OF SALARY FOR FEES—INTENT TO AFFECT INCUMBENTS
—PRESUMPTION AGAINST INCREASE.—Where an act substituting a
salary for a previous fee system of compensation fails to disclose
whether an increase of compensation is thereby produced, but suffi-
ciently shows an intent that the new system shall affect incumbents,
the conclusive presumption is that the governor and the legislature
have investigated, ascertained, and determined that the change does
not result in an increase of compensation, and the courts have no
right to review such determination.

ID.—ACT OF MARCH 13, 1909—SALARIES OF JUSTICES OF PEACE AND CON-
STABLES—CHANGE APPLICABLE TO INCUMBENTS.—The act of March
13, 1909 (Stats. 1909, p. 322), amending section 4243 of the Politi-
cal Code, relating to the compensation and expenses of officers of
counties of the fourteenth class, in its substitution of a salary for a
fee system of compensation for justices of the peace and constables,
was intended to affect incumbent justices and constables.   This con-
struction is rendered imperative by the language of section 2 of
the act, providing that, except as to the subdivisions thereof affect-
ing such officers, the act shall not take effect until the expiration of
the present terms of the officers therein enumerated.

ID.—UNIFORM OPERATION OF ACT—CLASSIFICATION OF COUNTY OFFICERS.
—Such construction of the act, making it immediately operative on
incumbent justices and constables, and suspending its operation as to
other county officers, is not violative of section 11 of article I of
the constitution, providing that "all laws of a general nature shall
have a uniform operation."   The distinction made by the act as to
its taking effect on the one class of incumbents and not on the
other is not an arbitrary one, but is founded in intrinsic differences
naturally suggesting the propriety of different adjustments of the
law in that regard.   The classification being authorized, the law is
uniform in its operation inasmuch as it affects equally all incumbents
in each class.   The fact that the act is applicable to only one class
of counties is immaterial.

ID.—LAW APPLICABLE TO ONE CLASS OF COUNTIES IS GENERAL—AMEND-
MENT TO ACT.—Under the constitutional provision empowering the
legislature to classify the counties by population for the purpose of
regulating the compensation of officers, when such a classification has
been made, a statute providing for the compensation of officers
within any class is a general law, and it is immaterial whether such
provision be in a special statute for each class, or in a single act
providing for all of the classes; and an amendment of such statute

which affects an entire class is equally a general law as was the original act.

ID.—COUNTY OF FOURTEENTH CLASS—CLASSIFICATION OF TOWNSHIPS.—That there is only one county in the fourteenth class is immaterial. The legislature may classify the townships of any class of counties according to population for the purpose of fixing the compensation of the township officers therein.

APPLICATION for a Writ of Mandate directed to the Auditor of Mendocino County.

The facts are stated in the opinion of the court.

Preston & Preston, for Petitioner.

Robert Duncan, District Attorney, for Respondent.

ANGELLOTTI, J.—This is an application to this court for a writ of mandate requiring the defendant to draw a warrant upon the treasurer of the county of Mendocino, a county of the fourteenth class, in favor of plaintiff for the sum of forty dollars, alleged to be the amount of salary due plaintiff as justice of the peace of Ukiah township in said county for the month of June, 1909. The matter was submitted on a general demurrer to the petition.

Plaintiff is entitled to the relief demanded if his rights in regard to compensation are determined by the provisions of an act entitled "An act to amend section 4243 of the Political Code of the State of California, relating to the compensation and expenses of officers in counties of the fourteenth class," approved March 13, 1909. (Stats. 1909, p. 322.)

His present term as justice of the peace commenced in January, 1907, and at the time of the approval of the act of March 13, 1909, the law fixing his compensation was section 171 of the County Government Act of 1897, as amended by an act approved March 21, 1905 (Stats. 1905, p. 670), under which both justices and constables of counties of the fourteenth class were compensated solely by specified fees for services performed, it being established by the decision in *Smith* v. *Mathews,* 155 Cal. 752, [103 Pac. 199], filed June 25, 1909, that the provisions of the act of March 18, 1907 (Stats. 1907, p. 354), by which the County Government Act, amended

in many particulars and revised, was incorporated as a part of the Political Code, was not to be construed as showing a legislative intent that the changes in salaries and compensation thereby made as to many officers should affect incumbents.

The act of March 13, 1909, deals exclusively with the matter of the compensation of the county and township officers of counties of the fourteenth class, no other subject being in the slightest degree referred to therein. The act consists of two sections. Section 1 of the act declares that "in counties of the fourteenth class the county and township officers shall receive as compensation for the services required of them by law or by virtue of their offices the following salaries and fees, to wit": and this is followed by fifteen subdivisions by which the compensation of each officer is fixed. No change was made thereby in the compensation of the recorder, tax-collector, assessor, district attorney, and supervisors, who had theretofore received fixed salaries, nor in that of the coroner, public administrator, or surveyor who, under both old and new law, were to receive "such fees as are now or may hereafter be allowed by law." The theretofore fixed salaries of the county clerk, auditor, treasurer, and superintendent of schools were increased, and the sheriff was given certain additional allowances. Subdivision 13 deals exclusively with justices of the peace, giving them for all services rendered in criminal cases, in lieu of the fees theretofore allowed, a monthly salary to be paid each month as salaries of county officers are paid, the salary to be forty dollars per month in townships where the population is two thousand or more, thirty dollars per month in townships where the population is one thousand and less than two thousand, and twenty dollars per month in townships where the population is less than one thousand, the population to be determined "by multiplying the vote for governor cast in each township at the next preceding general state election by five." No change was made in the matter of compensation in civil cases. Subdivision 15 deals exclusively with constables, providing in lieu of certain fees in criminal cases, a fixed monthly salary, graded, as in the case of justices, according to the populations of the townships. Section 2 of the act is as follows: "Except as to subdivisions 13 and 15, this act shall not take effect until the expiration of the present term of officers hereinabove enumerated."

It is claimed by defendant that this act was not intended by
the legislature to affect the compensation of incumbents of the
offices of justices of the peace and constables at the time it was
enacted. It is not disputed that the legislature had the power
either to reduce the compensation of any county or township
officer after his election or during his term of office, or to sub-
stitute a different method of compensation provided his com-
pensation was not thereby increased, the prohibition of section
9 of article XI of the constitution referring simply to an
*increase* of compensation. Nor is it disputed, the act before us
not disclosing whether or not the salary system of compensa-
tion substituted thereby for the fee system does produce an
increase of compensation for justices and constables, that, if
the act sufficiently shows the intent that the new system shall
affect incumbents, the conclusive presumption is that the gover-
nor and the legislature have investigated, ascertained, and
determined that the change does not result in an increase of
compensation, a fact essential to a valid law affecting incum-
bents, and that the courts have no right to question or review
the determination of the legislative branch of the state in that
regard. This is the doctrine established by *Stevenson* v. *Col-
gan,* 91 Cal. 649, [25 Am. St. Rep. 230, 27 Pac. 1089]. (See,
also, *Smith* v. *Mathews,* 155 Cal. 752, [103 Pac. 199].)

We cannot construe the act otherwise than as one intended
to affect incumbent justices and constables. The intention of
the legislature in that regard is too clearly expressed to admit of
any other construction, and it is impossible to account for the
insertion of section 2 of the act upon any other theory. If the
act was to have no application to incumbents section 2 was un-
necessary and meaningless. In an act dealing solely with the
matter of the compensation of the county and township officers
of counties of a certain class, the legislature says that "except
as to" the provisions relating to justices of the peace and con-
stables, the act "shall not take effect until the expiration of the
present term" of the officers, in other words, shall not affect
incumbents, for. in the connection in which they are used the
words used can have no other meaning. The necessary implica-
tion is that the excepted provisions, those relating to justices
of the peace and constables, shall "take effect" and affect
incumbents at the time every statute, unless a different time
is provided therein, does take effect, viz., "sixty days after its

passage" (Pol. Code, sec. 323). So far as the apparent intent of the legislature is concerned, the act before us must be read exactly as if section 2 in terms read: "Except as to subdivisions 13 and 15, this act shall not take effect until the expiration of the present terms of officers hereinabove enumerated. *As to subdivisions 13 and 15, it shall take effect sixty days after its passage.*" The sentence italicized is, in the absence of other language, the necessary consequence of the other sentence. Nothing else could have been meant or intended.

The doctrine of *Smith* v. *Mathews* is not opposed to our conclusion on this point. The court there was considering an act not dealing exclusively with the matter of compensation of county and township officers, but one that constituted a complete county government act, embracing, as said by the chief justice, "numerous other matters of grave importance, entirely distinct from official salaries and compensation." It was held that the true construction of such an act was to treat all the provisions as to compensation alike, and, "knowing that such of them as increase salaries could have been intended to apply only to officers elected subsequent to the amendment, to conclude, in the absence of express and specific declaration to the contrary, that other amendments which may or may not have the effect of increasing compensation were likewise intended to operate only in favor of or against officers to be thereafter elected." In the concurring opinion, the rule laid down is substantially that legislation affecting the compensation of an officer will not be presumed as intended to apply to incumbents unless the legislature "expressly so declares," and will not so apply unless the legislature has plainly said that it is to do so. Nothing more was meant or said thereby than that the intent of the legislature to that effect must be made to affirmatively appear by clear language. In the act under consideration, the declaration of the legislature is, in our judgment, tantamount to "an express and specific declaration" that the provisions as to justices and constables shall operate as to incumbents.

The claim is made by learned counsel for defendant that, if the act be construed as operative on incumbent justices and constables, it is violative of section 11 of article I of the constitution, which provides that "all laws of a general nature shall have a uniform operation." It is said that this law does

not operate uniformly for the reason that its operation is sus-
pended as to all officers upon whom it assumes to operate
except justices of the peace and constables.   This objection is
answered by the case of *Vail* v. *San Diego Co.*, 126 Cal. 35;
[58 Pac. 392], between which and the case at bar there is no
material distinction.   The plaintiff there was county surveyor
of San Diego County.   Under the law existing at the com-
mencement of his term, he was to receive "ten dollars per day
for all work performed."   During his term, the County Gov-
ernment Act of 1897 was enacted, and this act provided in
effect that in counties of the class to which San Diego belonged,
the surveyor should receive a salary of two thousand dollars
per annum "in lieu of all fees and *per diem* now allowed by
law."   The act provided that its provisions, "so far as they
change the compensation of any officer . . . heretofore paid a
fixed salary, or heretofore paid a fixed salary and commissions,
and not fees or *per diem*, shall not affect incumbents, unless
otherwise provided in any of said sections," and that "this
act, except as otherwise herein provided shall take effect and
be in force sixty days from and after its passage."   According.
to its terms the act did change plaintiff's compensation.   The
question was whether the act was effectual to change it, the
claim being, as here, that the provisions purporting to make
the changes operative on incumbents who had previously re-
ceived a *per diem,* but not on those who were in receipt of a
fixed salary, were in conflict with section 11 of article I of the
constitution.   It was held that the distinction thus made by
the act as to its taking effect on the one class of incumbents
and not on the other was not an arbitrary one, but one founded
in intrinsic differences naturally suggesting the propriety of
different adjustments of the law in that regard, and that the
classification was therefore authorized, and that this being so,
it followed that the law was uniform in its operation inasmuch
as it affected equally all incumbents in each class or category,
the court saying:   "A statute is uniform in its operation if it
applies to all persons or objects within the class to which it
relates; the general provisions of said sections 233 and 234, by
which the act of 1897 was made operative on the compensation
of incumbents who had been paid 'fees or *per diems*' affected
equally all incumbents in that category, and such operation is
therefore uniform."   We see no reason to question the correct-

ness of any conclusion reached in that case. In the case at bar, the act was made operative solely as to all incumbents whose method of compensation was changed from fees to salary. The only distinction made by learned counsel between that case and this is that the law involved in the Vail case "was a general statute applying to the entire state," while the act here is one applicable to one class of counties. This is entirely immaterial. The Vail case establishes the proposition that such a classification is authorized in any general law fixing compensation of county and township officers, and does not destroy the uniformity of the operation of the law. It is thoroughly established that, under the constitutional provision [Const., Art. XI, sec. 5], empowering the legislature to classify the counties by population for the purpose of regulating the compensation of officers, when such a classification has been made, a "statute providing for the compensation of officers within any class is a general law and . . . it is immaterial whether such provision be in a special statute for each class, or in a single act providing for all the classes, and . . . an amendment to such statute which affects an entire class is equally a general law, as was the original act," (*Welsh* v. *Bramlet,* 98 Cal. 219, [33 Pac. 66]). This point was very fully discussed in *Johnson* v. *Gunn,* 148 Cal. 745, [84 Pac. 665], in which many authorities are cited, and it is concluded "that the provisions made by the legislature in other acts, or in other sections of the same act, regulating the compensation of officers in other classes of counties, cannot be referred to or taken into consideration for the purpose of determining from them that the provisions relating to the townships in this class of counties are unconstitutional because special, or local, or not uniform with those adopted for the other classes." This was the clear effect of numerous decisions of this court. It may be that these decisions trench somewhat upon the doctrine of the earlier case of *Miller* v. *Kister,* 68 Cal. 142, [8 Pac. 813], relied on by defendant, although most of the later decisions have sought to distinguish it on the facts. However this may be, the conclusions we have arrived at not only appear to us to be correct on principle, but are too amply fortified by the later decisions to be avoided.

That there is only one county in the fourteenth class is, of course, immaterial. It is not disputed that the legislature may

classify the townships of any class of counties according to population for the purpose of fixing the compensation of the township officers therein. (See *Tucker* v. *Barnum*, 144 Cal. 266, [77 Pac. 919]; *McCauley* v. *Culbert*, 144 Cal. 276; [77 Pac. 923]; *Johnson* v. *Gunn*, 148 Cal. 745, [84 Pac. 665].)

What we have said practically disposes of all points made by learned counsel for defendant. We see no good answer to the claim of plaintiff.

Let a peremptory writ of mandate issue as prayed for in the petition.

Shaw, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.