[Civ. No. 8454. First Appellate District, Division Two.—May 2, 1932.]

H. BOYARSKY, Petitioner, v. HORACE P. ROSS, Auditor, etc., Respondent.

Decoto & St. Sure for Petitioner.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakley, Deputy District Attorney, for Respondent.

Harold Huovinen, *Amicus Curiae* on Behalf of Respondent.

STURTEVANT, J.—This is a proceeding in *mandamus.* In his petition the petitioner sets forth that on the ninth day of October, 1931, he was appointed as a deputy clerk in the Justice's Court of Oakland Township in Alameda County and that thereafter he qualified and ever since has been a duly appointed, qualified and acting clerk in said court; that the salary attached to said position is fixed by section 103c of the Code of Civil Procedure in the sum of $180 per month; that since the date of his appointment the amount of salary earned prior to the filing of this application was the sum of $498.56; that the defendant Auditor has refused to draw his warrant in payment of said salary and petitioner therefore asks a writ of mandate directing the payment. The respondent has filed a demurrer and has also filed an answer. The petitioner states that: "The sole question presented for determination is whether the power of fixing the number and compensation of justices' deputy clerks, of the justice's court of Oakland township, county of Alameda, rests with the board of supervisors of that county or with

the legislature of the state of California." However, he divides his argument into two parts. In the first place he claims that the charter of Alameda County made no direct provision on the subject but, instead of doing so, it purported to delegate the power to the board of supervisors and purported to authorize that board to cover the subject by enacting an ordinance. (Stats. 1927, p. 2033, sec. 12, subd. [c].) In this same connection he argues that the charter made no provision for any "inferior courts" or "other officers of inferior courts" (Const., art. XI, sec. 7½, subd. 3), and he concludes, therefore, that the passage contained in the charter is invalid and that section 103c of the Code of Civil Procedure is the law in force and which is applicable to his case. Calling attention to the amendment of the Constitution by the enactment of section 11a of article VI of the Constitution, and the later amendments to the Code of Civil Procedure extending the jurisdiction of justices of the peace in certain localities, the petitioner contends that a justice's court is not an inferior court within the meaning of article XI, section 7½, subdivision 3, of the Constitution, and therefore the board of supervisors of Alameda County had no authority to enact an ordinance on the subject of assistants and deputies in the office of the clerk of the justice's court— in other words, that the Justice's Court of Oakland Township was not within the contemplation of the board of freeholders when framing the provisions contained in the charter. To these contentions the rsepondent replies as follows. Article XI, section 7½, provides: "It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this Constitution, and the same shall provide, for the following matters: . . . 3. For the number of justices of the peace and constables for each township, . . . " The board of freeholders did as directed. It incorporated in the charter the following provisions covering the subject: "Sec. 21. In each township there shall be as many justices of the peace as are, or may be hereafter provided by general law, and not more than one constable for each justice's court, together with such clerks, deputy constables and other officers as may be authorized by the board of supervisors; . . . Sec. 22. Justices of the peace in each township shall be nominated and elected at the times and in the manner and for the

terms now or hereafter provided by general law. Constables shall be appointed by the sheriff from the eligible civil service list. Sec. 23. The compensation of justices of the peace of each township and of constables shall be fixed by the board of supervisors. . . . '' The respondent also quotes subdivision 5 of section 7½, of article XI of the Constitution, that the charter shall provide: ''5. For the fixing and regulation by boards of supervisors, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches and other persons to be employed, from time to time, in the several offices of the county, and for the prescribing and regulating by such boards of the powers, duties, qualifications and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal.'' The board of freeholders wrote section 12, which, among other things, provides: ''Sec. 12. It shall be the duty of the board of supervisors: . . . (b) To provide, by ordinance, for the compensation of elective and appointive officers, assistants, deputies, clerks, attaches and employees unless such compensation is otherwise fixed by this charter. The compensation of elective officers shall be fixed at least six months prior to the election of such officer. The compensation of elective officers shall not be increased or diminished after the election of such officer or during his term of office; provided, however, that the board of supervisors may allow such additional deputies or assistants as may be necessary and proper, to elective and appointive officers during their terms of office, and that the board of supervisors may also increase the compensation of such deputies and assistants during the term of office of such officers. . . . (d) To provide, by ordinance, for the number of assistants, deputies, clerks, attaches and other persons to be employed from time to time in the several offices and institutions of the county.'' Continuing, the respondent shows that pursuant to the provisions of the charter said ordinances have been enacted and that they provide that seven clerks may be appointed in the office of the justice of the peace of Oakland township and that prior to the appointment of this petitioner seven appointments had been made and that there was no vacancy and the appointment of the petitioner was not provided for. Moreover, the respondent calls attention to the fact that the

charter provides a complete civil service system, that ordinances have been enacted putting it in force, that examinations have been had, and that a list of available qualified persons has been prepared, but that the petitioner's name was not on said list. ■ The respondent notes that subdivision 5 of section 7½ uses the expression "offices of the county" and does not expressly use the words "offices of the township", but he contends that a township officer is in fact a county officer of limited jurisdiction. The point is sustained by many cases. (*Longan* v. *County of Solano,* 65 Cal. 122, 124 [3 Pac. 463]; *Crockett* v. *Mathews,* 157 Cal. 153 [106 Pac. 575]; *Keith* v. *Ramsey,* 34 Cal. App. 340, 341 [167 Pac. 408]; *Kilroy* v. *Whitmore,* 115 Cal. App. 43 [300 Pac. 851]; *People* v. *Cobb,* 133 Cal. 74, 77 [65 Pac. 325]; *Cox* v. *Jerome,* 31 Cal. App. 97, 99, 100 [159 Pac. 884].) Furthermore, picking up section 7½ of article XI, and reading it in its entirety, no doubt remains that it was intended to apply to all county and township offices and the deputies and assistants therein as those particular offices were heretofore known, to others recently created, and to others to be thereafter created by general statutes or by amendments to the Constitution. Moreover, when the people were called upon to vote on the proposed amendment to the Constitution, adding section 7½ to article XI, there were published by authority of law (Pol. Code, sec. 1195) written statements as to the meaning and scope of the section. Senator Caminetti, the author, stated:

"This proposal to amend the organic law occupying the second place on the official ballot for the ensuing special election on constitutional amendments, known as the 'County Home Rule Amendment,' is a logical growth from the successful administration of 'charter cities' formed under the 'home rule' provisions of our constitution relating to municipalities.

"When the constitution of 1879 was framed it was with the knowledge that the one adopted in 1849 permitted special legislation for county and local governments and for many other purposes. This privilege had been abused to such an extent as to create a widespread demand for uniformity in county government as well as for the regulation of many other matters of state concern. As a result the uniform system of county and township government, since in

force, was inserted therein. It was supposed to be impregnable to the assault of those demanding special laws, as to county and township officers, their salaries, and the number and compensation of deputies when such are allowed; but a way was devised, by classifying counties so as to put each county in a class by itself, to obtain on these subjects in the guise of uniformity what formerly was openly secured under special legislation. Thus the old system is still in control and is generally supreme. . . .

"A county should be governed by the same rule that a discreet business man conducts his affairs. The present county system does not work on such a plan. Home rule in county, township and road government will approximately, if not wholly, secure such a condition. It will have the merit of being a people's government, with the immediate power of correcting abuses in the possession of the electorate, . . .

"It will be noted that these subjects, viz.:

"(a) All matters of a local nature, affecting county administration and county and township officers and deputies, their employment, method of selection, amount of compensation, etc.; and

"(b) Road administration, including construction, repair and maintenance of all except state highways, are the two with which it will be competent, under this proposed amendment, for the people of a county to deal. These subjects generally require in the detail of their administration more of the people's taxes than all the balance of the business affairs of the county; hence it is considered proper that they should form the nucleus for the proposed charter county governments."

Senator T. W. H. Shanahan, writing in opposition to the adoption of the amendment, took the position that by the amendment a charter could be adopted that would provide for the appointment instead of the election of officers, but he was at great pains to indicate that a charter adopted by a board of freeholders would include all of the officers—both county and township.

In what has been said above it will be noticed that the respondent bases no right or defense on any part (except the first clause) of subdivision 3, section 7½, of article XI of the Constitution. He was not bound to do otherwise.

The entire subdivision is as follows: "3. For the number of justices of the peace and constables for each township, *or* for the number of such judges and other officers of such inferior courts as may be provided by the Constitution or general law, for the election or appointment of said officers, for the times at which and the terms for which said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, and if appointed, for the manner of their appointment." It will be observed that the passage is in the disjunctive. It will be conceded that the mandate of the Constitution directs the board of freeholders to provide for justices' courts or inferior courts. However there is no mandate to provide for both. We have shown above that the charter under consideration does provide for justices' courts. That was sufficient. The passage just quoted is closely allied to section 1, article VI, of the Constitution as it read when section 7½ was adopted: "Section 1. The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts, justices of the peace, and such inferior courts as the legislature may establish in any incorporated city or town, or city and county." That there should be inferior courts, whether justices' courts or otherwise, has at all times been provided in the Constitution. Therefore, to the end that a county, governed by a freeholders' charter, should not depart from the general policy of the state, subdivision 3 was inserted in section 7½ of article XI. However, as we have shown above, the provisions of said subdivision have been complied with so far as any element of this case is concerned and other matters need not be discussed.

As shown above, it has at all times been provided that our judicial system shall include courts inferior to superior courts (Const., art. VI, sec. 1). From time to time, in one place or another, we have had justices' courts, recorders' courts, municipal criminal courts, police courts, and quite recently municipal courts. Lately, in some counties where the population is large, it has been provided that the justices' courts therein shall have a more extended jurisdiction than other justices' courts. (Const., art. VI, sec. 11a; Stats. 1929, chap. 473.) But we have never had two or

more different classes of justices' courts. Cases involving municipal courts are not helpful. Those courts are a class unto themselves. (Const., art. VI, sec. 12; *In re Rissman,* 87 Cal. App. 176 [261 Pac. 727].) If in Alameda County provision were to be made for inferior courts as distinguished from justices' courts, then the petitioner might claim that the charter should have provided for his appointment, term of office, compensation, etc. (Const., art. XI, sec. 7½, subd. 3; *Simpson* v. *Payne,* 79 Cal. App. 780 [251 Pac. 324].) But no such court has been provided. A justice's court has been provided. Although the Justice's Court of Oakland Township has a broader jurisdiction than a justice's court in some other township, it is still a justice's court. Certainly there is nothing on the face of the Constitution to show that the words ''justice of the peace'' were used in subdivision 3, section 7½, article XI, with any different meaning or limitation than used elsewhere in that same instrument. Nothing is contained in Statutes of 1929, chapters 470 and 473, to the effect that the justices' courts therein named are not the same justices' courts as those referred to in the numerous sections of the Code of Civil Procedure (secs. 831h–927q) and other general laws.

As shown above the petitioner claims his appointment was validly made under Code of Civil Procedure, section 103c, as enacted by Statutes of 1931, chapter 1092, and that that statute was validly enacted under section 11a, article VI, of the Constitution as that section was adopted in 1928. Continuing, he claims that section 7½, article XI, of the Constitution, which was adopted in 1911, and the charter adopted thereunder, are not controlling as to his rights. It will be noted, however, that section 11a, article VI, deals with the number of judges, but is wholly silent as to any other officer of the court. On the other hand, section 7½ of article XI, specifically deals with the number, appointment and compensation of the judges, deputies, and assistants in justices' courts and inferior courts in a county having a charter. But section 11a, article VI, deals with inferior courts generally and in such broad terms as to include justices' courts. Does it modify or repeal section 7½ of article XI? It is settled law that Constitutions will be construed under the rules for construing statutes.

In *Bateman* v. *Colgan*, 111 Cal. 580, at page 586 [44 Pac. 238, 240], the court quoted with approval: " 'It is a rule of construction that a special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly, and, but for the special law, include the case or cases provided by it.' " When a charter is involved, general enactments are specially limited by construction in such manner as to protect the charter. (*Wood* v. *Board of Election Commrs.*, 58 Cal. 561, 564.) Therefore the petitioner has obtained no rights under section 11a of article VI of the Constitution or the statutes enacted thereunder. That he has no rights under general laws enacted under sections 4 and 5 of article XI is expressly stated in section 7½ of article XI.

The application for a writ is denied.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 1, 1932.