[No. B128720. Second Dist., Div. One. June 1, 2000.]

LOS ANGELES COUNTY EMPLOYEES ASSOCIATION, SEIU, LOCAL 660 et al., Plaintiffs and Respondents, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Defendants and Appellants.

**COUNSEL**

Lloyd W. Pellman, County Counsel, and Albert D. Kelly, Principal Deputy County Counsel, for Defendants and Appellants.

Liebert & Cassidy, Daniel C. Cassidy, Irma Rodriguez Moisa and Melanie M. Poturica for South Bay Judicial District of Los Angeles County as Amicus Curiae on behalf of Defendants and Appellants.

Victor Manrique; Susan Seletsky; Van Bourg, Weinberg, Roger & Rosenfeld, James Rutkowski and James G. Varga for Plaintiffs and Respondents.

**OPINION**

**MASTERSON, J.**—In 1996, the Compton Municipal Court implemented a plan to reduce the number of deputy court clerks covered by the civil service system. Under the plan, all newly hired or promoted clerks were designated as non-civil service. The clerks' union brought this action, challenging the municipal court plan. The trial court issued a writ of mandate directing the municipal court to accord civil service status to all of its deputy court clerks. The municipal court has appealed. We affirm.

BACKGROUND

Since 1949, deputy municipal court clerks in Los Angeles County have enjoyed the protection of the civil service system. However, in 1996, the judges of the Compton Municipal Court decided that newly hired clerks would be non-civil service, or "NCS." The judges also decided that existing deputy court clerks would lose their civil service status if they accepted a promotion, e.g., from deputy municipal court clerk I to deputy municipal court clerk II.

As defined by statute, NCS, or non-civil service, means that an employee "serve[s] at the pleasure of the appointing authority and may at any time be removed by the appointing authority." (Gov. Code, § 72609.) In contrast, civil service employees may not be disciplined, suspended, or discharged except for cause. (L.A. County Charter, art. IX, §§ 30-35; L.A. County Civil

Service Com. Rules, rules 4.01-4.03, 18.01-18.031.) The civil service system also allows employees to appeal an adverse decision to the Los Angeles County Civil Service Commission. (L.A. County Civil Service Com. Rules, rules 4.01-4.03, 18.01-18.031.)

In 1998, the Los Angeles County Employees Association, SEIU, Local 660, filed a petition for a writ of mandate (Code Civ. Proc., § 1085), seeking to protect the civil service status of the deputy court clerks at the Compton Municipal Court.[1] On July 20, 1998, Local 660 filed a first amended petition against the "Los Angeles Superior Court Administratively Unified Courts (Compton Municipal Court)" and the County of Los Angeles, praying for a writ of mandate to restore the civil service status of deputy court clerks who had been promoted and to provide civil service protection to deputy court clerks upon hire, promotion, and transfer.[2]

By order dated October 30, 1998, Judge Robert Parkin, the presiding judge of the Los Angeles County Superior Court, requested that the Judicial Council appoint a judge from outside the county to hear the petition. As a result, the case was assigned to Judge Robert D. Monarch of the Orange County Superior Court. The parties fully briefed the issues and presented argument at the hearing on the petition. By order dated December 24, 1998, Judge Monarch granted the petition and issued a writ of mandate in accordance with the prayer in the petition. A timely appeal followed.[3]

## DISCUSSION

■ Because this case requires the application of statutes and a county charter to undisputed facts, we review the trial court's decision de novo. (See *Metric Man, Inc. v. Unemployment Ins. Appeals Bd.* (1997) 59 Cal.App.4th

---

[1]When this action was filed, the Compton Municipal Court had 60 clerical employees in the civil service system and 27 with NCS status.

[2]Two individuals joined with Local 660 in bringing the petition: Helen Hernandez, a deputy municipal court clerk I at the Compton Municipal Court, and Kyle Weems, a taxpayer. An individual was also named as a defendant: Tim Aguilar, the executive officer/clerk of the Compton Municipal Court. We refer to the municipal court, the County of Los Angeles, and Mr. Aguilar as "defendants."

[3]In their opening brief, defendants state that, in the trial court, they challenged Mr. Weems's standing as a taxpayer, argued that plaintiffs had failed to join indispensable parties, and asserted that the County of Los Angeles was not subject to a writ of mandate. On appeal, defendants do not adequately discuss these points. We therefore consider them to be abandoned. (See *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838].)

1041, 1050 [69 Cal.Rptr.2d 569]; *Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].)[4]

█ " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . If the language of the statute is clear and unambiguous, there is no need for construction. . . . However, the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. . . . ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." . . .' . . . The legislative purpose will not be sacrificed to a literal construction of any part of the statute." (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515-1516 [73 Cal.Rptr.2d 450], citations omitted.)

## A. The Civil Service System

█ "[T]he ascertainment of fitness and merit for office is the primary objective of the civil service system . . . . It has a twofold purpose—'to abolish the so-called spoils system' in the matter of appointment in the service and 'to increase the efficiency' of employees therein 'by assuring [them] of continuance in office regardless of what party may then be in power' together with the opportunity 'for promotion to higher positions when vacancies occur [as] the reward of faithful and honest' work." (*Almassy v. L.A. County Civil Service Com.* (1949) 34 Cal.2d 387, 404 [210 P.2d 503].) "The basic principle of civil service . . . is that of a service in which appointments and promotions are based upon merit and employees' job

---

[4]The issue before us is not rendered moot by the recent unification of the Los Angeles County Superior and Municipal Courts. "[U]pon unification, previously selected officers, employees, and other personnel who serve the courts shall become the officers, employees, and other personnel of the unified superior court . . . with their existing . . . terms and conditions of employment that include . . . civil service or merit system coverage . . . ." (Gov. Code, § 70217, subd. (a), added by Stats. 1998, ch. 931, § 257 and amended by Stats. 1999, ch. 891, § 10.5.) Consequently, our decision will affect the current status of deputy court clerks previously employed at the Compton Municipal Court who now work for the Los Angeles County Superior Court. For clarity, we occasionally use the present tense even though the Compton Municipal Court no longer exists.

security is protected by relatively high assurances of tenure." (*Placer County Employees Assn. v. Board of Supervisors* (1965) 233 Cal.App.2d 555, 558 [43 Cal.Rptr. 782].)

As provided in the California Constitution: "The Legislature shall provide for the organization and prescribe the jurisdiction of municipal courts. It shall prescribe for each municipal court the number, qualifications, and compensation of judges, officers, and employees." (Cal. Const., art. VI, § 5, subd. (c); see Gov. Code, § 72000.)

In 1953, the Legislature enacted section 72002.1 of the Government Code, which states: "In any chartered county in which a system of civil service is in effect, the civil service commission thereof shall administer any civil service provisions made applicable by this code to attaches of municipal courts. [¶] Subject to the express provisions of this section and of any other state law, the provisions of the county charter relating to civil service and the rules of the civil service commission adopted pursuant thereto shall be applicable to the said attaches of the municipal courts in the same manner and to the same extent as applicable generally to officers and employees of such county. . . ." (Stats. 1953, ch. 1484, § 1, p. 3095, amended by Stats. 1967, ch. 1024, § 1, p. 2617.)

Thus, to determine whether deputy municipal court clerks are entitled to civil service protection, we first decide whether they are "attachés" within the meaning of Government Code section 72002.1. If so, we then look to the county charter to see if they come within the scope of the civil service system.

B. *The Meaning of "Attachés"*

The interpretation of "attachés" in the civil service context was before us in *Seidler v. Municipal Court* (1993) 12 Cal.App.4th 1229 [16 Cal.Rptr.2d 90]. There, we explained: "Whether Government Code section 72002.1 applies to [a particular position] . . . depends on the meaning given the word 'attachés.' The word is not defined expressly in the code. However, the meaning given the word can be implied from its use in companion statutes. Article 4 of chapter 9 of title 8 of the Government Code specifies the officers and attachés which may be appointed in the municipal court districts of Los Angeles County. The statutes authorize the appointment by the judges of a court administrator 'who shall be the clerk' and authorize the court administrator to appoint additional personnel. (Gov. Code, §§ 72750.4-72754.) In municipal court districts of a specified size, the judges may appoint a jury commissioner who shall 'hold office at the pleasure of . . . the judges.' (*Id.,* § 72757.)

"The judges may appoint the marshal (Gov. Code, § 72643), who in turn may appoint specified subordinates (*id.*, §§ 72645, 72646); the administrative personnel to be appointed by the marshal are described as 'attachés' (*id.*, § 72646). Government Code section 72150 permits the judges to authorize the clerk and marshal of the court to 'appoint as many additional deputies as will enable them to promptly and faithfully discharge the duties of their respective offices.' After describing the powers and duties of the clerk (*id.*, § 71280) and marshal (*id.*, § 71264), the code turns to those designated 'other officers' in article 5 of chapter 8 of title 8 of the Government Code. These include commissioners (*id.*, § 72190), jury commissioners (*id.*, § 72191) and official court reporters (*id.*, § 72194).

"Based on all of the foregoing provisions, the logical conclusion is that the clerk (court administrator), marshal, commissioners, jury commissioner and court reporters are officers of the court, *while subordinate employees[,] which some of these officers are authorized to appoint[,] are attachés.*" (*Seidler v. Municipal Court, supra,* 12 Cal.App.4th at pp. 1234-1235, italics added.)

Plainly, deputy court clerks are subordinate to the clerk/court administrator and the other specified officers. Indeed, Government Code section 72767 authorizes the clerk/court administrator of the Compton Municipal Court to appoint several types of attachés and expressly includes deputy municipal court clerks in that category. Simply put, deputy municipal court clerks are attachés, not officers.

 The distinction between attachés and officers is based on one of the fundamental elements of the civil service system: "the practically universal presence of a set of excepted offices and positions termed *exempt* or *non-classified.* With individual variations, civil service laws normally except designated offices and positions such as elective offices, appointive department heads, confidential assistants and temporary technical consultants . . . . Some of these exemptions are premised on the desirability of maintaining maximum responsiveness on the part of those holding high-echelon or 'sensitive' positions; others on the impracticability of recruitment via civil service." (*Placer County Employees Assn. v. Board of Supervisors, supra,* 233 Cal.App.2d at p. 558, citations omitted, italics in original.)

C. *Civil Service Classifications*

 Because deputy municipal court clerks are attachés, they are entitled to the civil service rights that are generally applicable to officers and employees of Los Angeles County. (See Gov. Code, § 72002.1.) Those rights are found in the county charter.

Article IX, section 30 of the Los Angeles County Charter states that "[t]he purpose of this article is to establish a Civil Service System for the *classified* service which shall provide County government with a productive, efficient, stable, and representative work force . . . ." (Italics added.)

The charter continues: "The Civil Service of the County is hereby divided into the *unclassified* and the *classified* service.

"The *unclassified* service shall comprise: [¶] (a) All officers elected by the people. [¶] (b) Members of all commissions, committees and boards created by this Charter, statute or ordinance. [¶] (c) All heads of County agencies and departments. [¶] (d) In the office of the District Attorney: The Chief and one other deputy, Bureau Chiefs, Assistant Bureau Chiefs, Administrative Deputy-District Attorney, Chief Field Deputy, three Special Assistants, one secretary, and three detectives; and special counsel and special detectives for temporary employment. [¶] (e) In the office of the Sheriff: The Undersheriff, or Chief Deputy, one Executive Assistant, one Executive Secretary, three Field Deputies, two Assistant Sheriffs, and eight Division Chiefs. In the office of the Assessor: The Chief Deputy, one Assistant Assessor, one Executive Secretary, three Special Assistants, and four Directors. [¶] (f) Superintendents, principals and teachers in the school system. [¶] (g) All officers and other persons serving the County without compensation. [¶] (h) In the office of each Supervisor: All Deputies. Some or all of these Deputies may by ordinance be given a job title other than Deputy. [¶] . . . [¶][5]

"The *classified* service shall include *all other* positions now existing or hereafter created." (L.A. County Charter, art. IX, § 33, italics added, fns. omitted.) Thus, if a position is not listed in the unclassified service, it falls into the classified service by default and is covered by the civil service system.

To ensure that municipal court employees receive the same compensation, rights, and benefits as their superior court counterparts, the Legislature enacted Government Code section 72608, which establishes a framework for ensuring parity.[6] That statute equates the position of deputy court clerk (in the municipal court class) with intermediate typist-clerk (in the superior

---

[5]The charter was recently amended to add subdivision (i), which states that, in each county agency or department, the unclassified service shall include chief deputies and assistants or deputies next in line of authority to chief deputies. (L.A. County Charter, art. IX, § 33, subd. (i).) Neither side relies on this new provision.

[6]Section 72608 provides in part: "In order to maintain the relationship of compensation and employee rights and benefits between officers and attachés of municipal courts and county or superior court employees having commensurate duties and responsibilities and to provide

court class). (37 West's Ann. Gov. Code, § 72608 (2000 supp.) p. 75.) The Los Angeles County Charter does not designate either of those positions as unclassified. (L.A. County Charter, art. IX, § 33.) Consequently, deputy municipal court clerks are classified and entitled to civil service protection.[7]

Our conclusion is supported, if not compelled, by Government Code section 72767, which states:

"In the Compton Municipal Court District, the officers and attachés shall be appointed, as follows:

"(a) There is one court administrator who shall be the clerk appointed by the judges of the court and who shall hold office at the pleasure of the judges of that court.

"(b) The clerk may appoint:

"(1) Thirty-two deputy municipal court clerks I.

"(2) Thirty-two deputy municipal court clerks II.

"(3) Twenty-two deputy clerks III, M.C.

"(4) Fifteen deputy clerks IV, M.C.

"(5) One senior administrative assistant, M.C.

"(6) Six assistant chief deputy clerks, M.C.

---

appropriate salary adjustments and employee rights and benefits for related classes of court positions, this section shall govern salary adjustments and employee rights and benefits for officers and attachés of municipal courts in Los Angeles County. [¶] On the effective date of any amendment to the Los Angeles County Code adjusting the salary of a county employee classification listed in the table of positions set forth in this section, or on the effective date of a resolution or ordinance by the board of supervisors approving interim salary adjustments for superior court classes . . . , the salary of the related municipal court position listed opposite thereto shall be adjusted an equivalent number of schedules or steps in a schedule in the salary schedule to which that position is attached."

[7]This is not to say that deputy municipal court clerks in *all counties* are civil service employees. In fact, the Government Code recognizes that, with respect to compensation, rights, and benefits, deputy municipal court clerks may be either civil service employees or NCS. (Gov. Code, §§ 72608, 72609.) However, as stated, the determination of civil service status must be made on a county-by-county basis in accordance with each county's charter. (See Gov. Code, § 72002.1.) The narrow question before us is whether the former deputy court clerks at the Compton Municipal Court are protected by civil service rules. Our focus is therefore limited to the Los Angeles County Charter.

"(7) One data systems analyst II, M.C.

"(8) One head personnel technician, M.C., *NCS*.

"(9) One senior judicial secretary, Muni Ct.

"(10) One senior secretary III, Muni Ct. [¶] . . . [¶]

"(15) Two data systems analysts I, M.C.

"(16) Five division chiefs, M.C., *NCS*.

"(17) One personnel assistant, M.C.

"(18) One staff assistant, Muni Ct. [¶] . . . [¶]." (Italics added.)

Obviously, the Legislature realized the need to exempt some court employees from the civil service system, i.e., the clerk/court administrator, the head personnel technician, and five division chiefs. But the Legislature did not designate deputy court clerks as NCS. This strongly suggests that the judges of the Compton Municipal Court cannot alter the civil service status of the clerks.[8]

Defendants correctly point out that Government Code section 72002.1 begins by addressing the civil service rights of deputy municipal court clerks, and then provides: "It shall be competent for the judge or a majority of the judges of any municipal court to adopt rules for the *conduct* of, and *personnel privileges* to be afforded, the personnel of their court . . . ." (Italics added.) Defendants read the latter provision as granting them the authority to decide which court employees, if any, are entitled to civil service protection. Not so. If that were the case, the exception would swallow the rule. Instead, the provision simply allows municipal court judges to establish general working conditions. (See, e.g., *Rivas v. County of Los Angeles* (1961) 195 Cal.App.2d 406, 409-411 [15 Cal.Rptr. 829] [upholding municipal court regulations concerning leaves of absence].) In short, "rules of conduct" and "personnel privileges" do not encompass the procedural and substantive rights accorded by the civil service system.

---

[8]Amicus curiae South Bay Judicial District of Los Angeles County notes that the Legislature enacted separate legislation governing the civil service treatment of municipal court attachés in San Diego County. By its own terms, Government Code section 72002.1, on which we rely, "shall not apply to municipal courts in judicial districts in San Diego County." (Gov. Code, § 72002.1, par. 4.) Rather, other statutes dictate the civil service status of deputy municipal court clerks in San Diego County. (See, e.g., Gov. Code, §§ 74340, 74348.) We fail to understand how the separate statutory scheme for San Diego County has any relevance in determining the civil service rights of the Compton Municipal Court Clerks.

Defendants also argue that denying civil service protection to newly hired and promoted court clerks would conserve resources and streamline the unification of the superior and municipal courts. However, that argument runs afoul of the mandatory nature of civil service rules: "[T]he civil service commission . . . *shall* administer any civil service provisions . . . applicable . . . to attachés of municipal courts." (Gov. Code, § 72002.1, italics added.) There is no exemption based on fiscal policy or court unification. (See Gov. Code, § 70217, subd. (a).)

Finally, defendants contend that they did not "force" anyone out of the civil service system. As they see it, job applicants are free to work elsewhere if they want civil service protection, and deputy court clerks, once hired, can forego promotions if they want to remain in the civil service. In defendants' vernacular, applicants and employees can "voluntarily" choose whether to work in a civil service position. We do not share defendants' distorted view of employee freedom.

To us, defendants' argument takes the concept of civil service and stands it on its head. Carried to its logical conclusion, defendants' theory would allow all public employers to condition future employment on a waiver of civil service status, bringing an end to the entire system. Surely civil service protection cannot be so easily manipulated or circumvented. "A civil service system is traditionally thought to protect lower level employees, who exercise little or no discretion in matters of public policy, from having their jobs depend on the whims of elected officials . . . ." (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1694 [40 Cal.Rptr.2d 125].)

Further, defendants' theory of voluntary choice undermines one of the primary benefits of the civil service system: "the opportunity 'for promotion to higher positions when vacancies occur [as] the reward of faithful and honest' work." (*Almassy v. L.A. County Civil Service Com.*, *supra*, 34 Cal.2d at p. 404.) Under defendants' plan, a promotion would certainly be a mixed blessing—a trade-off of civil service protection for advancement. That hardly sounds like an appropriate "reward" for good work.

We heed the caution that " '[a] court should not read into a remedial statute an exception that would impose obstacles to the achievement of its purposes. . . .' " (*Foster .v. Snyder* (1999) 76 Cal.App.4th 264, 270 [90 Cal.Rptr.2d 207].) Defendants' attempt to condition hiring and promotion on a surrender of civil service status would constitute just such an obstacle.

## D. *Separation of Powers*

Amicus curiae South Bay Judicial District of Los Angeles County asserts that, under the doctrine of separation of powers, judges—not the Legislature—should decide the employment status of court employees. In essence, the amicus curiae argues that the civil service system is unconstitutional as applied to employees in the judicial branch. We disagree.

As our Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.)

In general, the doctrine of separation of powers "places limits upon the actions of each branch with respect to the other branches. The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function . . . . The executive branch, in expending public funds, may not disregard legislatively prescribed directives and limits pertaining to the use of such funds. . . . And the Legislature may not undertake to readjudicate controversies that have been litigated in the courts and resolved by final judicial judgment." (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046].)

"[T]he cases recognize that the Legislature generally may adopt reasonable regulations affecting a court's inherent powers or functions, so long as the legislation does not 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (*Superior Court v. County of Mendocino, supra*, 13 Cal.4th at pp. 58-59.) As the amicus curiae concedes in its brief, "there is no record in this case that the employment status of a municipal court clerk may impair the judiciary's independence or efficiency . . . ."

Moreover, article XI, section 4, subdivision (f) of the California Constitution states: "County charters *shall* provide for: [¶] . . . [¶] . . . The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, *deputies, clerks, attachés,* and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and *the manner of their appointment and removal.*" (Italics added (hereafter article XI(4)(f)).)

On its face, article XI(4)(f) appears to cover deputy court clerks. In fact, it does. In applying the predecessor provision to article XI(4)(f),[9] the Court of Appeal held that the Constitution permits a charter county to establish a civil service system that governs the employment of court clerks. (*Boyarsky v. Ross* (1932) 123 Cal.App. 267, 270-271, 274-275 [11 P.2d 641] [deputy clerk in justice court]; see also *Schecter v. County of Los Angeles* (1968) 258 Cal.App.2d 391 [65 Cal.Rptr. 739] [civil service status of courtroom bailiffs].)[10]

In addition, a line of California Supreme Court cases supports the conclusion that civil service protection for deputy municipal court clerks does not pose a threat to the constitutional power or functions of the judicial branch. (See generally *Superior Court v. County of Mendocino, supra*, 13 Cal.4th at pp. 53-58 [discussing cases].)

By way of example, admission to the State Bar is inherently a judicial function, but the Legislature may nonetheless impose general qualifications for, and restrictions upon, bar membership. (*Brydonjack v. State Bar* (1929) 208 Cal. 439, 443-444 [281 P. 1018, 66 A.L.R. 1507].) Similarly, in the absence of legislation, the judicial branch enjoys the inherent power to hire employees and set their compensation. However, the Legislature can legitimately enter that sphere, authorizing some other entity to fix the compensation of court employees. (*Millholen v. Riley* (1930) 211 Cal. 29, 31, 34 [293 P. 69].)

Nor is the doctrine of separation of powers violated by legislation allowing parties to disqualify a judge through the filing of an affidavit of prejudice (*Johnson v. Superior Court* (1958) 50 Cal.2d 693, 695-697 [329 P.2d 5]), by a statute limiting the courts' power to punish for contempt of court (*In re McKinney* (1968) 70 Cal.2d 8, 9-12 [73 Cal.Rptr. 580, 447 P.2d 972]), or by a law authorizing a county to designate unpaid furlough days on which the

---

[9]The former provision (art. XI, § 7½) is virtually identical to article XI(4)(f). It required that county charters provide "[f]or the fixing and regulation by boards of supervisors, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, from time to time, in the several offices of the county, and for the prescribing and regulating by such boards of the powers, duties, qualifications and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal . . . ." (Deering's Ann. Cal. Const., former art. XI, § 7½ (1974 ed.) p. 31.)

[10]In *Boyarsky v. Ross, supra*, 123 Cal.App. 267, the Court of Appeal also addressed the question of whether a justice court was an "inferior" court. (*Id.* at pp. 269, 273-275.) In so doing, the court commented that "[c]ases involving municipal courts are not helpful." (*Id.* at p. 274.) By that, the Court of Appeal meant that municipal courts are "courts of record" and are not "inferior" courts. (*In re Rissman* (1927) 87 Cal.App. 176 [261 P. 727], cited in *Boyarsky v. Ross, supra*, 123 Cal.App. at p. 274.)

trial courts in that county must be closed (*Superior Court v. County of Mendocino*, *supra*, 13 Cal.4th at pp. 59-66).

In light of the foregoing authorities, we think it clear that civil service protection for deputy municipal court clerks will "not 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (*Superior Court v. County of Mendocino*, *supra*, 13 Cal.4th at pp. 58-59.) This is especially so given that, under the civil service system, court clerks can be disciplined or discharged for cause.

DISPOSITION

The December 24, 1998 order, granting plaintiffs' petition for writ of mandate, is affirmed.

Spencer, P. J., and Ortega, J., concurred.