[Civ. No. 4362. Third Appellate District.—June 16, 1931.]

DAN E. KILROY, Respondent, v. EDWARD WHITMORE, as County Treasurer, etc., et al., Appellants.

44

R. R. Fowler, District Attorney, and F. O. Hoover, Deputy District Attorney, for Appellants.

G. B. Hjelm, S. V. Cornell and Harold L. Hjelm for Respondent.

JAMISON, J., *pro tem.*—This is a proceeding by *mandamus* by petitioner, as Justice of the Peace of Turlock Township, in Stanislaus County, to compel H. C. Keeley, as Auditor of said county, to draw a warrant in his favor and to compel Edward Whitmore, as Treasurer of said county, to pay the same, Kilroy, the petitioner, being hereafter referred to as the respondent and Whitmore and Keeley as the appellants.

Respondent was elected Justice of the Peace of Turlock township in November, 1926, and took office January 3, 1927, and thereafter continued to act as such Justice of the Peace during all of the times named in the petition, appellants during said period holding the said offices of Auditor and Treasurer respectively.

Subdivision 13 of section 4245 of the Political Code provides that for the purpose of regulating the compensation of justices of the peace of townships of this class of counties, the said townships should be classified according to their population, as shown by the total number of registered voters in each township at the next preceding general election, prior to the fixing of the classification, the said population to be determined by multiplying the said total number of registered voters by three and one-half.

When respondent took office, Turlock township having a population of 8,000 and less than 15,000, was classified as belonging to the second class with a justice's salary of $100 per month. In 1927, and after respondent had entered upon the discharge of the duties of his office, subdivision 13 of section 4245 was amended by adding an additional class to those then in existence, known as class one and one-half, by providing that a township having a population of 11,000 and less than 15,000 should belong to and be known as townships of the one and one-half class, in which the justice of the peace should receive a salary of $150 per month.

On August 15, 1927, the board of supervisors of said county of Stanislaus made an order to the effect that it appearing that the total number of registered voters in Turlock township, at the general election in November, 1926, was 3,469, that, therefore, the population of said township

was 12,141, and thereupon declared said Turlock township to be a township belonging to the one and one-half class.

A demurrer was interposed to the petition, which was overruled and appellants thereupon filed their answer, setting forth therein that the amendment of subdivision 13 of section 4245 of the Political Code was enacted and took effect after respondent was elected to the office of justice of the peace and after he had entered upon the discharge of the duties of that office, and that said amendment effected an increase in the salary of that office and that, under the provisions of section 9, article XI, of the Constitution, said amendment is not effective during the present term of said respondent. Thereupon respondent moved for a judgment on the pleadings and the same being granted, judgment was rendered ordering that a peremptory writ of mandate be issued. From this judgment the said Whitmore and Keeley have appealed.

Section 9 of article XI of the Constitution provides that the compensation of any city, county, town or municipal officer shall not be increased after his election or during his term of office.

█ Justices of the peace of townships are included in the officers referred to in section 9 of article XI of the state Constitution, which forbids an increase in the compensation paid to them during their term of office. (*Cox* v. *Jerome*, 31 Cal. App. 97 [159 Pac. 884]; *Smith* v. *Mathews*, 155 Cal. 752 [103 Pac. 199]; *Crockett* v. *Mathews*, 157 Cal. 153 [106 Pac. 575].)

When respondent was elected to the office of justice of the peace of Turlock township, as the law then stood, his township belonged to the second class and carried a salary of $100 per month. When he took office class one and one-half did not exist, but was created by legislative act thereafter. Can it be said that when he assumed the duties of his office, he or the people who elected him, had in contemplation that this salary of the office would be increased during his term? The case of *Puterbaugh* v. *Wadham*, 162 Cal. 611 [123 Pac. 804], relied upon by respondent, does not bear out this assumption. That was a proceeding by *mandamus* to compel the city auditor of the city of San Diego to draw his warrant in payment of petitioner's salary, as justice of the peace of the city of San Diego. He had been appointed to this office in 1909 at

which time the said city was a city of the third class and the office of justice of the peace carried a salary of $2,000 per annum. In November, 1910, he was elected for the full term beginning the first Monday in January, 1911. At the time of his election and when the term of his elective office began, the city of San Diego had passed, by reason of its increased population, from the third to the second class, and justices of the peace, under said last-named classification, were entitled to a salary of $3,600 per annum. In upholding this increase of salary the court said: "We think the section" (sec. 9, art. XI, Const.) "could have no application to the change in salary due to the passing of a city, not by legislative act, but by increased population, from one class to another—not a legislative but an automatic change. When petitioner was elected justice of the peace the statute established his salary at two thousand dollars a year because of the population of San Diego, but the same statute fixed the salary of a justice of the peace in a city of the 2d class, and the evolution of the city into that class did not increase his salary as such—it merely placed him in a new class in which he was entitled to a certain salary which happened to be in excess of that payable to him when he took the office. The possibility of a change in his status when the city should grow into another class must have been in the contemplation of the officer and of the people who elected him. That this change would operate to increase his salary must also have been within their contemplation, and section 9 of article XI of the Constitution, which was designed to protect taxpayers from legislative interference with their rights by increasing the compensation paid to their elected officers without consent of the electorate would have no application to such a case as this."

· In the case now before us, had the act of the legislature creating townships of the one and one-half class been enacted before respondent was elected and took office, then the increase in his salary would have been automatic upon an increase of population to the extent required to constitute it a township of the one and one-half class. But the increase in respondent's salary was not brought about automatically, but by an act of the legislature enacted after his election and after he entered upon the term of his office.

In the case of *Shay* v. *Roth,* 64 Cal. App. 314 [221 Pac. 967], it was held that an amendment to the county charter voted by the voters of San Bernardino County increasing the salary of the sheriff of that county and which took effect on approval by the legislature after the sheriff took office was in violation of section 9, article XI, of the Constitution. In the course of his decision in that case, Justice Shenk, in reviewing the decision of *Puterbaugh* v. *Wadham, supra,* said: ''The compensation claimed by the petitioner in that case was the salary as fixed by law and prior to the commencement of his term of office.''

The Constitution (sec. 9, art. XI) clearly implies that there must be a law in force fixing the compensation of every county and township officer at the date of his election, and it imperatively forbids any increase of that compensation by a law subsequently enacted. (*Smith* v. *Mathews,* 155 Cal. 752 [103 Pac. 199].)

It has been uniformly and consistently held that whenever new legislation is made which will have the effect, actually or presumptively, to increase the compensation to be paid to an incumbent officer of a county that such legislation is to be postponed in its effect until the commencement of the new term of office to which the successor of the incumbent may be elected. (*Williams* v. *Garey,* 19 Cal. App. 769 [127 Pac. 824].)

*Yuma County* v. *Sturges,* 15 Ariz. 538 [140 Pac. 504], and *Delaware County* v. *Williams,* 38 Okl. 738 [13 Pac. 420], cited by respondent, as supporting his contention that the increase in respondent's salary was automatic, fail to do so. In both of these cases the law providing for the higher classification and the increased salary had been enacted prior to the commencement of the term of office of the officer claiming to be entitled to such increase. The increase was allowed in one case because the increased population placed the county in the higher class and in the other because the increased assessed valuation of the property in the county so placed it. In neither of these cases was the law establishing the class and providing for the increased salary enacted after the election of the officer and after he had entered upon the discharge of his duties.

When respondent was elected justice of the peace of Turlock township his salary was fixed by law at $100 per

month. This was the salary he contemplated receiving when he accepted the office and it was this salary that the people who elected him contemplated that he would receive during his term of office. By an act of the legislature passed after the commencement of his term of office a new and different classification was made of his township · and an increased salary for the office of justice of the peace for that township was provided.

This was not an automatic increase of the salary of the office of justice of the peace of said township caused by an increase of population to a class established prior to his taking office, but it was an increase of said salary by a direct act of the legislature.

Such being the case, the inhibition of section 9 of article XI of the Constitution applies and consequently the said act of the legislature is inoperative during the term of office of respondent.

Respondent claims that he is entitled to extra compensation for the additional services required of him as said justice of the peace by the amendment of 1927, which placed his township in the one and one-half class and provided that he should keep his office open from 9 A. M. to 12 M. and from 1 P. M. to 5 P. M. That by this amendment a duty additional to those theretofore required of his office was thereby imposed upon him. ▇ An officer who accepts an office to which a fixed salary or compensation is attached is deemed to undertake to perform its duties for the salary or compensation fixed, though it be inadequate, and if the proper authorities increase its duties by the addition of others germane to the office, the officer must perform them without extra compensation. (Mechem on Public Officers, sec. 862; 1 Dillon on Municipal Corporations, 4th ed., sec. 233. See *Buck* v. *City of Eureka*, 109 Cal. 504 [30 L. R. A. 409, 42 Pac. 243].)

▇ It is well settled that a statute or ordinance imposing on an officer new duties which are an incident to his office and providing an additional salary or emolument therefor is in violation of the constitutional provision against increasing the compensation of an officer during his term. (21 A. L. R. 256.) But if the duties are without the scope or range of his office then the rule is otherwise. (51 A. L. R. 1522.) ▇ This amendment providing that respondent should be

furnished with an office and that he should keep it open during certain hours of the day was within the range and scope of his duties and germane thereto. He is, therefore, not entitled to extra compensation for the performance of this new and additional duty.

The judgment is reversed.

Preston, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 16, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1931.