[Civ. No. 12056.   First Dist., Div. One.   Sept. 2, 1942.]

EDWARD I. McAULIFFE, Respondent, v. THOMAS J. KANE, as County Controller, etc., Appellant.

Gilbert D. Ferrell, District Attorney, for Appellant.

John W. Coleberd, Edmund Scott, Francis N. Foley and F. E. Hoffmann for Respondent.

KNIGHT, J. — This appeal involves the question of whether petitioner, as justice of the peace of the Third Judicial Township of San Mateo County, is entitled to the increase in salary provided for by a county ordinance enacted more than two years after petitioner's term of office began. The trial court held that he was, and the controller of the county has appealed.

The facts are not disputed, and for all the purposes of the appeal may be stated as follows: San Mateo County is governed by a freeholders' charter, adopted pursuant to section 7½ of article XI of the state Constitution, which provides, among other things, that it should be competent in all charters framed under the authority thereto to provide "For the number of justices of the peace and constables for each township, or for the number of such judges and other officers of such inferior courts as may be provided by the Constitution

or general law, for the election or appointment of said officers, for the times at which and the terms for which said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, and if appointed, for the manner of their appointment; . . ." Pursuant to the authority thus granted the Charter of San Mateo County provides: "Article VIII. Township Officers. Section 1. Judicial Townships and Justices of the Peace. The county shall be divided into five judicial townships, which shall be identical with the existing supervisorial districts. Each such township shall have one justice of the peace, who shall be elected in the manner provided by general law for a term of four years and shall hold office until his successor is elected and qualified. Each justice of the peace shall devote his entire time to the duties of his office, if and when required by ordinance of the board of supervisors. . . . Section 3. Compensation of Justices of the Peace and Constables. The compensation of justices of the peace and of constables shall be fixed by the board of supervisors and must be salaries only and in such amounts as may be commensurate with their respective duties. Such salaries need not be uniform in amount for the several townships nor proportionate to population therein. Their duties and qualifications shall be such as now are, or may hereafter be prescribed by law." (Stats. 1933, p. 2972.)

Petitioner was elected justice of the peace of the Third Judicial Township on August 30, 1938, for a four-year term which began January 1, 1939. At the time he was elected and on the date of the commencement of his term of office the salary of the office of justice of the peace of the Third Judicial Township was fixed by county ordinance at $2,100 a year. Also at the time he was elected and when his term of office began, section 81 of the Code of Civil Procedure provided: Justices' courts in cities, towns and judicial townships, having a population of 30,000 or more, shall be known, and may be designated, as "Justices' Courts of Class A." Justices' courts in cities, towns, and judicial townships having a population of less than 30,000 shall be known, and may be designated, as "Justices' Courts of Class B." Determination of Population. For the purpose of determining the jurisdiction of any justice's court therein, the population of a judicial township shall be deemed to be above or below thirty thousand as may have been found "by the Supreme Court of

this State to be the fact in any proceeding in mandamus, prior to January 1, 1931, to compel the justices of such townships to exercise original jurisdiction in certain causes''; otherwise such population shall be deemed to be as shown by the last preceding census taken under the direction of the Congress of the United States. In 1939 said section was amended by striking out that portion thereof last above quoted and inserting in lieu thereof the following: "to be the fact in any proceeding in mandamus brought in a court having jurisdiction thereof.'' After petitioner had served more than half of his four-year term, and on May 29, 1941, the board of supervisors of said county enacted an ordinance whereby for the first time it fixed salaries for justices of the peace of Class A justices' courts. They were fixed at $3,600 a year for the fiscal year commencing July 1, 1941; and on July 28, 1941, the superior court of said county, in a mandamus proceeding instituted for that purpose under the provisions of section 81 of the Code of Civil Procedure (1) determined that the population of said Third Judicial Township was then in excess of 30,000, (2) declared the justice's court of the Third Judicial Township, by reason of the increased population, to be a justice's court of Class A, and (3) commanded petitioner as justice of the peace of said Third Judicial Township to forthwith assume full responsibility and complete jurisdiction of a justice's court of Class A. On September 2, 1941, petitioner demanded that the controller draw petitioner's salary warrant for the month of August, 1941, for $300, the amount provided for by the ordinance enacted after petitioner's term of office began, and the controller refused to issue the warrant for any greater sum than $175, the amount fixed by the ordinance in effect at the time petitioner was elected and began his term of office. Thereupon the present proceeding in mandamus was instituted.

The state Constitution and the Charter of the county of San Mateo prohibit any increase in the salary of a township officer after he is elected and during his term of office. The constitutional provision is as follows: ''. . . The compensation of any county, township or municipal officer shall not be increased after his election or during his term of office . . .'' (§ 5, art. XI.) The Charter provision reads: ''The compensation of any elective county or township officer shall not be ·increased nor diminished during the term for which

he was elected, nor within ninety days preceding his election." (§ 1, art. XIII.) As will be noted, the foregoing provisions are unconditional and prohibit every increase in compensation, without exception; and here the undisputed facts show that the legislative act of the board of supervisors providing for the increased salary to which petitioner claims to be entitled, was passed long after the commencement of petitioner's term of office. Therefore the increase is not available to petitioner.

The case presented is the same in principle and similar in most of its essential facts to *Kilroy* v. *Whitmore,* 115 Cal. App. 43 [300 Pac. 851] (hearing by Supreme Court denied). There by state law the judicial townships of Stanislaus County were classified according to population, using as a basis of calculation the number of registered voters therein; and the salary of the justice of the peace for each class was fixed by the same legislative act. The petitioner in that case was elected justice of the peace of Turlock township, which then had a population of between 8,000 and 15,000. Consequently it was a township of the second class, and the salary of the justice thereof was fixed at $100 a month. After petitioner began his term of office the Legislature amended the law whereby an additional classification was created, designated as class 1½. It included townships having a population of between 11,000 and 15,000, and the salary of the justice of the peace thereof was fixed at $150 a month. Thereafter the board of supervisors made an order based on the number of registered voters in the Turlock township, declaring that said township belonged to class 1½. The incumbent justice of the peace demanded the larger salary. It was refused, and he instituted a proceeding in mandamus to recover the same. The proceeding was decided in his favor, but on appeal the judgment was reversed, the court holding that the situation fell within the inhibition of the constitutional provision against increase in compensation during the term of office. In so holding the court said: "The Constitution (§ 9, art. XI) clearly implies that there must be a law in force fixing the compensation of every county and township officer at the date of his election, and it imperatively forbids any increase of that compensation by a law subsequently enacted. (*Smith* v. *Mathews,* 155 Cal. 752 [103 Pac. 199].) It has been uniformly and consistently held that whenever new legislation is made which will have the effect, actually or presump-

tively, to increase the compensation to be paid to an incumbent officer of a county that such legislation is to be postponed in its effect until the commencement of the new term of office to which the successor of the incumbent may be elected. (*Williams* v. *Garey*, 19 Cal. App. 769 [127 Pac. 824].)'' In applying the foregoing legal principles to the facts of that case, the court went on to say: ''. . . had the act of the Legislature creating townships of the one and one-half class been enacted before respondent was elected and took office, then the increase in his salary would have been automatic upon an increase of population to the extent required to constitute it a township of the one and one-half class. But the increase in respondent's salary was not brought about automatically, but by an act of the Legislature enacted after his election and after he entered upon the term of his office.'' And later the court said: ''When respondent was elected justice of the peace of Turlock township his salary was fixed by law at $100 per month. This was the salary he contemplated receiving when he accepted the office and it was this salary that the people who elected him contemplated that he would receive during his term of office. By an act of the Legislature passed after the commencement of his term of office a new and different classification was made of his township and an increased salary for the office of justice of the peace for that township was provided.'' And so here, when petitioner was elected, his salary as justice of the peace of the Third Judicial Township was fixed at $175 a month. ''This was the salary he contemplated receiving when he accepted the office and it was this salary that the people who elected him contemplated that he would receive during his term of office.'' (*Kilroy* v. *Whitmore, supra.*) The legislative act of the board of supervisors providing for the increase in salary took place, and the judicial classification of the justice court was had, after the commencement of petitioner's term of office. Therefore, as held in the Kilroy case, it was not an automatic increase in salary, and consequently the legislative act of the board of supervisors providing for the increase was not operative during his term of office.

Another case closely resembling the present one and upon which both parties place more or less reliance, and which is reviewed but differentiated in the *Kilroy case, supra,* is *Puterbaugh* v. *Wadham,* 162 Cal. 611 [123 Pac. 804]. That was a proceeding in mandamus to compel the city auditor of the

city of San Diego to draw his warrant in payment of petitioner's salary, as justice of the peace of the city of San Diego. He had been appointed to this office in 1909, at which time the said city was a city of the third class and the office of justice of the peace carried a salary of $2,000 per annum. In November, 1910, he was elected for the full term beginning the first Monday in January, 1911. At the time of his election, and when the term of his elective office began, the city of San Diego had passed, by reason of its increased population, from the third to the second class, and justices of the peace, under said last-named classification, were entitled to a salary of $3,600 per annum. It was held that the incumbent was entitled to the increased compensation. But in so holding the court pointed out that the constitutional inhibition against increases in compensation during the term of office is directed against increases brought about by legislative acts, as distinguished from automatic increases; and the court then went on to show that in that case all of the legislation necessary to take care of the contemplated automatic change, to wit, the statute creating the classification of the court and fixing the salaries of justices of the peace of all classes, had already been enacted and was in full force and effect prior to petitioner's election and the commencement of his term of office. Furthermore, and most important, it was pointed out that at the time petitioner was elected and when the term of his elective office began the city of San Diego had already passed by reason of its increased population into the higher classification; hence it was held that the change was automatic. Here the situation was entirely different. Both the legislative act of the board of supervisors increasing the salary, and the judicial determination classifying the court according to population, took place more than two years after petitioner's term of office began.

Petitioner contends that the ''office of justice of the peace of a Class A court is totally different and distinct from the office of justice of the peace of a Class B court, and therefore the change in salary'' herein is not affected by either the constitutional or the charter provision; and in support of such contention he points out that the jurisdiction of a Class A justice's court differs from that of a Class B justice's court criminally, civilly, and territorially, and that the qualifications for the office of justice of the peace thereof are different. It appears, however, from an examination of the code sections

bearing upon this question and from the history thereof that by the enactment of said section 81 of the Code of Civil Procedure authorizing the classification of justices' courts there was no intent to provide for the creation or establishment of any new or separate court and that all the Legislature intended to do was to clarify a situation which had arisen with respect to the matter of jurisdiction; and the following cases may be cited as fully sustaining this view: *In re Jacobson*, 16 Cal. App. (2d) 497 [60 P. (2d) 1001]; *Shipp* v. *Superior Court*, 209 Cal. 671, 673 [289 Pac. 825]; *County of Los Angeles* v. *Justice's Court*, 208 Cal. 429 [281 Pac. 611]; *People* v. *Justice's Court*, 212 Cal. 603 [299 Pac. 731]; *Van Horn* v. *Justice's Court*, 216 Cal. 235 [13 P. (2d) 704]. In other words, as pointed out in *In re Jacobson, supra,* before the year 1929 the jurisdiction of the justices' courts throughout the state was uniform. In that year the Legislature amended section 1425 of the Penal Code by providing different criminal jurisdiction for justices' courts in townships having a population of 30,000 or more, and in 1931 the Legislature amended section 112 of the Code of Civil Procedure by enlarging the civil jurisdiction of the justices' courts having a population of 30,000 or more. Evidently for the purpose of clarifying that situation the Legislature in 1933 added section 81 to the Code of Civil Procedure by which justices' courts were divided into two classes, to be known as Class A and Class B, the line of demarcation being that Class A should consist of courts in those townships having a population of 30,000 or more; and accordingly said section 1425 of the Penal Code and section 112 of the Code of Civil Procedure were amended so as to define the jurisdiction of each class. Nothing is to be found in either the wording of the code sections themselves or in the decisions which have been rendered construing them to justify the conclusion that the purpose of the enactment of said section 81 was to provide for the establishment of a new or different court, or a new or different office for the incumbent justice. The office to which he is elected is "Justice of the Peace" of a certain township, not justice of the peace of any designated class of justice's court, and even though afterwards the court of that particular township, by reason of increased population, is classified as a Class A justice's court, the title of his office remains unchanged.

It is further contended that "as a justice of the peace of a Class A court, petitioner has new and additional duties

imposed upon him which are without the scope and range of the office of a Class B court, and therefore the salary provided by ordinance 523 does not constitute an unconstitutional or unlawful increase.'' It has been definitely held in this state, however, that ''An officer who accepts an office at a fixed salary or compensation is deemed to undertake to perform the duties thereof for such stipulated salary, though it be inadequate; and if the proper authority increases his duties by the addition of others germane to the office the officer must perform them without extra compensation.'' (*Vogel* v. *White*, 134 Cal. App. 252 [25 P. (2d) 233]; *Kilroy* v. *Whitmore, supra.*) Here the duties imposed upon the justice of the peace in question do not involve performance of duties foreign to or not within the range or scope of the office of justice of the peace. As justice of the peace of a Class B justice's court it was his duty to hear and determine causes within the jurisdiction of that class. As justice of the peace of a Class A justice's court it is his duty to hear and determine causes within the jurisdiction of that class. In substance, there has been no imposition of new duties, but merely an increase in the burden of the existing duties, that is, they are all germane to the duties of the office to which he was elected; therefore, under the doctrine above stated, he cannot claim additional compensation for the discharge of those duties even though the salary may be inadequate remuneration for the work now required of him. Petitioner calls attention to certain cases involving administrative officers wherein it was held that the addition of new duties justified the allowance of increased compensation. But the facts of those cases show that the duties so added were not germane to the duties of the office to which the incumbent was elected. In the decision in one of the cases so cited, *San Luis Obispo County* v. *Felts*, 104 Cal. 60 [37 Pac. 780], certain general language is used which tends to support petitioner's position, but such language must be applied to the facts of that particular case, which are essentially different from those here presented.

Petitioner's final contention is that he is entitled to the increased salary by reason of the provisions of section 5 of article VIII of the county charter. An examination thereof demonstrates, however, that it has no bearing whatever upon the question here presented. It is therein provided that ''If the Legislature of this state shall establish *some other system*

of inferior courts for counties, then the board of supervisors may discontinue the offices of justices of the peace and constables, if such discontinuance be allowed by law, and shall provide for such inferior judicial officers as may be required by such other system." (Italics ours.) Petitioner argues that another system of inferior courts has been established as a result of the classification of justices' courts into Class A and Class B; but as already pointed out there is no merit in such argument. There has been no other system of inferior courts established since the adoption of the county charter.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 29, 1942. Carter, J., voted for a hearing.