[Sac. No. 6280. In Bank. Apr. 3, 1953.]

ANDREW W. MARTIN, Respondent, v. A. H. HENDER-
SON, as Director of the Department of Motor Vehicles,
etc., et al., Appellants.

GEORGE H. REDWINE, Respondent, v. A. H. HENDER-
SON, as Director of the Department of Motor Vehicles,
etc., et al., Appellants.

584

Fred N. Howser and Edmund G. Brown, Attorneys General, and Wilmer W. Morse, Deputy Attorney General, for Appellants.

James H. Phillips for Respondents.

EDMONDS, J.—For a number of years, Andrew W. Martin was a traffic sergeant and George H. Redwine a traffic officer of the State Highway Patrol. They worked in excess of regular hours of duty without receiving equivalent time off. After the termination of their employment, Martin and Redwine each filed a petition to compel the appropriate state official to approve his claim for overtime. The appeal is from a judgment requiring approval and payment of the claims.

The facts are undisputed. During the entire period of service, the monthly salary of each petitioner was fully paid. Martin worked about 500 hours in excess of his regular hours of duty, 100 of them being worked between February 6 and September 29, 1943. Redwine's excess hours of duty totaled 332, all but 33 of them being served before February 6, 1943.

Martin retired on April 30, 1947. Redwine's separation from service was on March 16, 1947.

Headquarters General Order No. 295, issued by the chief of the highway patrol, effective October 1, 1939, provided: "Employees ordered to work beyond the hours ordinarily required or hours overtime in addition to what is considered their regular full day's work, may be allowed time off on the day following or at some other convenient time in lieu of the overtime hours worked. Overtime hours shall be adjusted by the immediate superior of the employee affected and shall not become a part of the Headquarters' record."

Order No. 295 was canceled by Headquarters General Order No. 394 effective August 5, 1942. The new order read: "Employees ordered to work beyond the hours ordinarily required and considered as a full days work may be allowed compensating time off in lieu of such overtime worked. Such overtime hours may be granted and adjusted by the immediate superior of the employee affected and shall not become a part of the Headquarters record."

On June 5, 1945, the chief of the highway patrol issued Information Bulletin No. 323, requiring that any claim for overtime hours accumulated prior to September 29, 1943, must be reported to the department in writing, accompanied by evidence in affidavit form supporting the claim. Failure to present a claim in the form outlined by June 30 would constitute a waiver of any claim for such overtime hours. Each of the petitioners complied with the requirements of this bulletin by timely filing a claim in the specified form.

Thereafter, on August 21, 1945, Headquarters Information Bulletin No. 329 was issued rejecting each and all of the claims presented pursuant to Bulletin No. 323. Following a list of reasons for the rejection of the claims, Bulletin No. 329 stated that "it is not believed that the State is privileged at this time either to grant compensating time off for overtime hours . . . worked prior to September 29, 1943, or to pay an employee the cash equivalent thereof on separation or otherwise. Accordingly, liability therefor is hereby denied and no such overtime credit will be recognized . . . and any and all overtime hours . . . accumulated or claimed to have been accumulated prior to September 29, 1943, are hereby cancelled."

Rule 12 of the State Personnel Board, adopted June 17, 1938, with reference to the pay plan for the state civil service provided for pay schedules. Section 2(c) of the rule stated

that: "The rates of pay set forth in the pay schedules, unless otherwise indicated in such schedules, represent the total compensation in every form." It was also provided in section 2(h) that: "When the rate of pay is in terms of dollars a month no additional payment for overtime shall be made to any employee for services rendered by him in the same department, whether in the discharge of his ordinary duties or for any other duties which may be imposed upon him or which he may undertake or volunteer to discharge or perform." On October 18, 1940, section 2(h) of rule 12 was amended to read: "When the rate of pay is in terms of dollars a months no additional payment for overtime shall be made to any employee for services rendered by him in the same classification in the same department."

Effective February 6, 1943, section 150.5 was added to the State Civil Service Act (Stats. 1937, ch. 753) providing: "Upon a separation from service, without fault on his part, a person shall be entitled to a lump sum payment as of the time of separation . . . for any time off to which the person is entitled by reason of previous overtime work where compensating time off for overtime work is provided for by the appointing power or by the rules of the board. Such sums shall be computed by projecting the accumulated time on a calendar basis so that the lump sum will equal the amount to which the employee would have been paid had he taken the time off but not separated from the service." (Stats. 1943, ch. 20, § 2, p. 136; now Gov. Code, § 18005.)

The petition of Redwine, filed March 11, 1948, asked that the respondent state officers be required to approve and pay his claim for overtime on the basis of the amount of salary he was receiving at the time he left the state service. By petition filed on April 21, 1948, Martin sought the same relief. The answer of the respondents denied that any amount was due for overtime. They alleged that any accumulated overtime hours had been canceled by departmental action and that the causes of action are barred by various statutory provisions.

Upon trial the superior court, by writ of mandate, directed that the respondents approve Martin's claim in the amount of $872.95 and Redwine's for $512.44, the respective cash values of the claimed overtime. The appeal is from that judgment.

In support of their appeal, the respondents contend that, insofar as hours worked prior to February 6, 1943, are con-

cerned, Martin and Redwine were paid monthly salaries which, by statute, constituted compensation in full for all services which might be rendered by them. Prior to that date, they say, there was no statutory provision for overtime compensation and none could be allowed in the absence of statute. The respondents also argue that the claims are barred by the statute of limitations, regardless of whether the hours were worked prior or subsequent to February 6, 1943. Even if Martin and Redwine are entitled to a cash payment for overtime worked prior to February 6, 1943, the respondents say, the amount should be computed upon the basis of each officer's salary as of the time the hours were worked, rather than as of the time of separation.

Martin and Redwine rely upon *Howard* v. *Lampton,* 87 Cal.App.2d 449 [197 P.2d 69], and *Clark* v. *State Personnel Board,* 56 Cal.App.2d 499 [133 P.2d 11]. These decisions were based, by analogy, upon *Pohle* v. *Christian,* 21 Cal.2d 83 [130 P.2d 417], in which it was held that a civil service employee, upon separation from service without fault on his part, is entitled to a cash payment for accumulated vacation time. The basis for the conclusion in the Pohle case was the statutory provision giving each officer and employee of the state a right to a vacation of specified duration. (Former Pol. Code, § 359c; *cf.* Gov. Code, § 18050.) In accordance with former section 359d of the Political Code (now Gov. Code, § 18052), the State Personnel Board had provided for payment upon separation for unused portions of vacation time. (State Personnel Board Rule 13, § 4.) The court held that, because the applicable sections of the Political Code "do not expressly or otherwise provide that an employee having the right to a vacation loses his right to compensation for that time upon being separated from the service" he is entitled to payment for unused vacation time. (P. 90.)

The Clark case followed the Pohle decision insofar as payment for accumulated vacation time was concerned. The court then held that, despite the absence of any statutory provision granting time off for overtime work and a rule of the Personnel Board specifically prohibiting payment for overtime, a state employee may be paid upon separation from service for accumulated overtime hours. It said: "We see no difference in principle between allowing an employee a cash payment for accrued vacation time upon his separation from the service, and allowing him, upon such separation, a cash payment in lieu of the compensatory time off to which

he may have become entitled because of overtime worked."
The rule regarding payment for overtime hours expressed in
the Clark case was applied to retired officers of the highway
patrol in the Howard case, which involved a factual situation
substantially similar to that here presented.

The basic fallacy in the Howard and Clark cases was the
court's assumption that, in the absence of any statutory
provision, a civil service employee had a right to compensatory time off for overtime work. Those decisions are clearly
distinguishable from the Pohle case, where the employee had
a right granted by statute to a specified amount of vacation
time.

Prior to February 6, 1943, the effective date of section
150.5 of the State Civil Service Act, *supra,* there was no
statutory provision for overtime compensation. Section 1033
of the Political Code (now Gov. Code, § 18000) provided:
"The salaries fixed by law for all state officers, elective or
appointive, shall be compensation in full for all services rendered in any official capacity or employment whatsoever, during their terms of office, and no such officer shall receive for
his own use any fee or perquisite for the performance of
any official duty." The same limitation was applied to civil
service employees by the State Personnel Board (State Personnel Board Rule 12, § 2[c], *supra*) acting under its power
to "establish and adjust salary ranges." (Stats. 1937, ch.
753, § 70, p. 2094; now Gov. Code, § 18850.) Implementing
this limitation, the board also specifically prohibited additional payment to any employee for overtime. (State Personnel Board Rule 12, § 2[h], *supra.*) ■ Officers of the
highway patrol are included within civil service (Const., art.
XXIV, § 4[a]) and come within the definition of the word
"employee" for the purposes of the State Civil Service Act.
(Stats. 1937, ch. 753, § 8, p. 2086; now Gov. Code, § 18526.)

■ The statutory and regulatory limitations upon compensation for services are but a codification and application
to civil servants of the oft-repeated rule "that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally
claim additional compensation for the discharge of these
duties, even though the salary may be a very inadequate
remuneration for the services, nor does it alter the case that
by subsequent statutes or ordinances his duties are increased,
and not his salary. His undertaking is to perform the duties
of his office, whatever they may be, from time to time during

his continuance in office for the compensation stipulated, whether these duties are diminished or increased; and whenever he considers the compensation inadequate he is at liberty to resign." (*Dougherty* v. *Austin*, 94 Cal. 601, 629 [28 P. 834, 29 P. 1092, 16 L.R.A. 161]; *Buck* v. *City of Eureka*, 109 Cal. 504, 517 [42 P. 243, 30 L.R.A. 409]; *McAuliffe* v. *Kane*, 54 Cal.App.2d 288, 296 [128 P.2d 932]; *Vogel* v. *White*, 134 Cal.App. 252, 254 [25 P.2d 233]; *Kilroy* v. *Whitmore*, 115 Cal.App. 43, 49 [300 P. 851].)

The rule applies not only to the duties themselves, as in the cases cited, but also to the hours of work. When the employee is paid by time, as by the day, week, or month, rather than by the amount of work which he does, he is bound, in the absence of statute, to render services without regard to the number of hours worked. (*Robinson* v. *Dunn*, 77 Cal. 473 [19 P. 878, 11 Am.St.Rep. 297].) Thus, in this case, Martin and Redwine, being paid by the month, could be required to work whatever number of hours each month was necessary for the performance of their duties. The situation is in no way analogous to that in the Pohle case where the vacation was a matter of statutory right. The vacation was a period of time when no services could be required although compensation continued to be payable.

Obviously, efficient management and satisfactory employment relations require the state to fix reasonable work hours. In the absence of a statutory provision therefor, time off granted for work done in excess of those hours is not given as of right, but is allowed in accordance with the necessities of the duties to be performed. (Former Pol. Code, § 350; now Gov. Code, § 11152; *cf.* Stats. 1937, ch. 753, § 154, p. 2103; now Gov. Code, § 18705.) The fact that normal hours of work are established and compensating time off is provided for work beyond those hours does not, of itself, give the employee a right to payment for overtime.

"The terms and conditions of civil service employment are fixed by statute and not by contract. (Citations.) 'When an employee of the state, under civil service, accepts a position, he does so with knowledge of the fact that his salary, and, indeed, his conduct, are both subject to the law governing such matters, as set forth in the statute and the rules and regulations of the commission.' (Citations.) The statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented

by purported contracts in conflict therewith." (*Boren* v. *State Personnel Board,* 37 Cal.2d 634, 641 [234 P.2d 981].)

 The enactment of section 150.5 of the State Civil Service Act and the addition of sections 73 and 73.5 to the act, effective June 7, 1943 (Stats. 1943, ch. 1041, §§ 1-2, pp. 2976-2977; now Gov. Code, §§ 18020-18024), providing a comprehensive system of overtime computation and compensation, did not create a right to payment for overtime previously worked. The statutes were not, and could not be, retroactive. "The Legislature shall have no power to grant, . . . any extra compensation or allowance to any public officer, agent, servant, or contractor, after service has been rendered, . . . in whole or in part, nor to pay, or to authorized the payment of, any claim hereafter created against the State, . . . under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void." (Const., art. IV, § 32.) The services performed by Martin and Redwine prior to February 6, 1943, were such as they were bound to render for their fixed monthly salaries. Under the prohibition of the Constitution, they could be granted no extra compensation for such services. (*Robinson* v. *Dunn, supra,* p. 475.)

Insofar as *Howard* v. *Lampton, supra,* and *Clark* v. *State Personnel Board, supra,* determine that a state officer or employee, in the absence of specific statutory authority, is entitled to a cash payment for accrued overtime upon separation from service, they are disapproved. Also disapproved is language in *Howard* v. *Lampton, supra,* pp. 457, 459, implying that section 18005 of the Government Code may be applied retroactively.

The respondents do not contend that payment could not be allowed for hours worked in excess of normal subsequent to February 6, 1943, the effective date of section 150.5. However, they argue that the claims of Martin and Redwine are barred in their entirety by the statute of limitations, regardless of whether the hours were worked prior or subsequent to that date. Because there was no right to payment for overtime worked prior to February 6, 1943, this contention will be considered only in relation to hours worked after that date.

 Section 19630 of the Government Code, as here material, provides: "No action or proceeding shall be brought by any person having or claiming to have a cause of action or complaint or ground for issuance of any complaint or

legal remedy for wrongs or grievances based on or related to any civil service law in this State or the administration thereof unless such action or proceeding is commenced and served within one year after such cause of action or complaint or ground for issuance of any writ or legal remedy first arose.'' This is the statute of limitations applicable to salary claims of employees or those who have been separated from service (*Philbrick* v. *State Personnel Board,* 53 Cal. App.2d 222, 230 [127 P.2d 634]) and controls the time for bringing any action upon a claim for overtime services. (*Broyles* v. *State Personnel Board,* 42 Cal.App.2d 303, 307 [108 P.2d 714].)

It is conceded that each of these proceedings was commenced within one year after the date of the petitioner's separation from service. Relying upon *Dillon* v. *Board of Pension Commrs.,* 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800], the respondents contend that the statute commenced to run upon August 21, 1945, when the department rejected all claims for accumulated overtime. Martin and Redwine argue that this contention was concluded by *Howard* v. *Lampton, supra,* pp. 456-457, which held that the statute did not start to run until the date of separation from service.

In the Dillon case, the question before the court was whether the period of limitation upon the right to claim a widow's pension commenced to run at the death of the husband or was to be measured from the date each payment of the pension would have become due. Holding that the date of death was decisive, the court said: ''A cause of action accrues when a suit may be maintained thereon, and the statute of limitations therefore begins to run at that time. (Citations.) The cause of action to establish the right to a pension accrued to plaintiff at the time of her husband's death. At any time following the death she could demand a pension from the board and upon refusal could maintain a suit to enforce such action.'' (P. 430.)

No cause of action to compel the payment of overtime claims accrued to Martin and Redwine prior to their separation from service. Until that date, they might have been given compensating time off whenever their departmental superiors deemed it convenient to the service. The petitioners had no legal remedy to compel their superiors to give them time off at any specific time, or at all. Only in the event uncompensated overtime remained upon their

separation from service did a right accrue to them to compel action by the department.

The respondents argue, however, that upon the department's denial of credits for accumulated overtime a cause of action accrued, "not to compel compensating time off or the cash equivalent of time off, but to establish status as a person having compensable overtime to his credit usable if, as and when compensating time off could be granted." In essence, this position is that the petitioners had a cause of action to establish their right to compensation for overtime even if there was no remedy to enforce such right. Although no specific reference is made to it, the respondents apparently suggest that there might be an action for declaratory relief. However, the availability of such an action would in no way affect the period of limitations commencing upon the department's breach of its obligation to pay for accumulated overtime. As stated in *Maguire* v. *Hibernia Sav. & L. Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062], "the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred. On the other hand, if declaratory relief is sought 'before there has been a breach of the obligation in respect to which said declaration is sought,' or within the statutory period after the breach, the right to such relief is not barred by lapse of time. (Citations.) There is no anomaly in the fact that a party may have a right to sue for declaratory relief without setting in motion the statute of limitations. Quiet title actions, forerunners of declaratory actions, may be maintained when an adverse claim to property is asserted, but the period of limitations does not commence to run at that date." (P. 734.)

The amounts to which Martin and Redwine are entitled are to be computed by "projecting the accumulated time on a calendar basis so that the lump sum will equal the amount which [they] would have been paid had [they] taken the time off but not separated from the service." (Gov. Code, § 18005.) At the time of his separation from service, Martin's salary amounted to $340 per month, or $1.70 per hour based upon a 48-hour week. Subsequent to February 6,

1943, he accumulated 100½ overtime hours, or a sum equal to $170.85. Redwine's salary at the time of his separation from service was $310 per month, or $1.54 per hour. For the 33 hours of accumulated overtime for which he legally may claim compensation, he is entitled to $50.82.

Insofar as the judgment directs the state officials to approve the petitioners' claims in excess of these enumerated amounts, the judgment is reversed. In all other respects, it is affirmed, each party to pay his own costs on appeal.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

These cases were correctly decided by the District Court of Appeal, Third District (see *Martin* v. *Lampton*, (Cal.App.) 240 P.2d 21) and I adopt the views there expressed. However, I desire to comment on the position taken by the majority here.

The record discloses that the state employees here involved worked overtime at the express command of their superiors with the promise of time off for the overtime, yet the majority denies them compensation therefor on the grounds that there is no statutory authority for the payment of such overtime or promise to pay it, and that as to their claim for overtime since the enactment of section 150.5 of the State Civil Service Act (Stats. 1937, ch. 753) in 1943 expressly providing for overtime pay, it is barred by the statute of limitation.

The overtime pay here claimed must be allowed under *Pohle* v. *Christian*, 21 Cal.2d 83 [130 P.2d 417]. In that case plaintiff sought to recover a lump sum for accumulated vacation pay after he was separated from his position. It was held that he was entitled to pay for the vacation accumulated prior to his severance on the ground that sections 359c and 359d of the Political Code then authorized vacations and the accumulation of vacation time. *It made no provision, however, for payment of accumulated vacation time after separation from service, where the vacation was not taken prior to separation.* That case has since been followed. (*Clark* v. *State Personnel Board*, 56 Cal.App.2d 499 [133 P.2d 11]; *Verry* v. *Eckel*, 61 Cal.App.2d 595 [143 P.2d 394].) The majority seeks to escape the effect of that case by asserting that at common law there is no right to recover for overtime when a person is hired by the month, and there is no statute

authorizing payment for overtime as there was authorizing a vacation in the Pohle case. In that reasoning the majority is in error. The statutes in force at the time the overtime service was rendered provided: "Eight hours of labor constitutes a day's work, unless it is otherwise expressly stipulated by the parties to a contract." (Lab. Code, § 510.) "Eight hours labor constitutes a legal day's work in all cases where the same is performed under the authority of any law of this State, or under the direction, or control, or by the authority of any officer of this State acting in his official capacity, or under the direction, or control or by the authority of any municipal corporation, or of any officer thereof." (Lab. Code, § 1810.) "Every person employed in any occupation of labor is entitled to one day's rest therefrom in seven." (Lab. Code, § 551.) "No employer of labor shall cause his employees to work more than six days in seven." (Lab. Code, § 552.) While those provisions do not expressly state that they apply to the state as an employer, there is no reason why they should not inasmuch as they are not in derogation of the state's sovereignty and there is no reason why we should suppose that the Legislature intended to require private employers to treat their employees in a more favorable manner than its own employees. There is, therefore, statutory authority which fixes the hours of labor like that in the Pohle case which authorizes a vacation and an accumulation thereof for which pay may be recovered on separation from service. From such authority it follows that work beyond those hours is overtime and compensation therefor should be paid the same as in the Pohle case where it was held that from the establishment of the right to a vacation and to accumulate it, a right to be paid for the vacation when not taken ensued. Moreover, it should be noted that the heads of departments of the state "may arrange and classify the work of the department" and adopt rules and regulations "necessary to govern the activities of the department" and may "assign" to its "employees such duties as it sees fit." (Gov. Code, § 11152.) Having that authority it could, as it did, require employees to work overtime and make a valid promise to give time off in lieu thereof. Having failed to give the time off before the separation of the employee from service, like an untaken vacation in the Pohle case, it is proper to award the employee money for the withheld time off as was done for untaken vacation time in the Pohle case. It is clear, therefore, that there was statutory

authority for agreeing to give time off for overtime, and in lieu thereof compensation, and the Pohle case is controlling.

In addition, however, the state is estopped to assert that the department of motor vehicles through the chief of the highway patrol did not have authority to promise time off for overtime. The case of *Boren* v. *State Personnel Board,* 37 Cal.2d 634 [234 P.2d 981], is clearly distinguishable. In the Boren case there was positive statutory authority to transfer an employee from one part of the state to another (here we have no positive statutory provision that there shall be no pay for overtime; the statutes are to the contrary) and there was no showing in that case of unjust enrichment by the state at the expense of the employee as we have here. Here the employee was promised time off to compensate for overtime. In reliance thereon he gave extra time to the state. If the state may take that extra labor without paying for it as the majority holds, the state is being unjustly enriched at the expense of the employee. We have, therefore, a clear case of estoppel. There are many cases where estoppel may run against the government. (See cases cited, *Farrell* v. *County of Placer,* 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323].) A few instances may be pointed out in which the justice of invoking estoppel is present as much or even less than here. In *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309 [44 P.2d 547], the city of Los Angeles was held estopped to abandon eminent domain proceedings where, in reliance thereon, defendant property owner had acquired other property and constructed a building thereon. It was there said (p. 330), "If the city had expressly agreed by its officers with defendants' grantors, even in parol, that a certain line should constitute the boundary line between the street and the grantor's property, and upon the faith of such agreement the grantors had erected a block of buildings flush with the line of the street as agreed upon by all parties, it would be a hard law that would allow the city to repudiate that agreement, and destroy the grantor's property. No court should countenance such a thing, and an estoppel *in pais* will rise up in the pathway of a city to bar it and its principal, the people, from the commission of such a grievous wrong; and to give the acts of this city a very limited meaning we think its conduct in the present case at least equivalent to an oral agreement as to the location of the true boundary line of the street." (To the same effect, see *McGee* v. *City of Los Angeles,* 6 Cal.2d 390 [57 P.2d 925].) In *City of Los Angeles* v. *Cohn,* 101 Cal.

373 [35 P. 1002], the city was estopped to claim property which it owned but said it did not and in reliance thereon the person who had been in possession thereof built a building on it. The same situation, except it was a canal through a city, was involved in *Fresno* v. *Fresno C. & I. Co.*, 98 Cal. 179 [32 P. 943]. Land claimed by the city as streets was considered in *Sacramento* v. *Clunie* 120 Cal. 29 [52 P. 44]. In *City of Los Angeles* v. *County of Los Angeles*, 9 Cal.2d 624 [72 P.2d 138, 113 A.L.R. 370], a county was held estopped to collect from a railroad company additional payments for use of its land when it had been accepting certain payments for 15 years. In *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432 [73 P. 189], the city was held liable for water it received and was estopped to deny liability on the claim that its ordinance providing for payment was invalid. In *Tyra* v. *Board of Police etc. Commrs.*, 32 Cal.2d 666 [197 P.2d 710], it was held that the city was estopped to plead the statute of limitation in an action by an employee for a pension where the pension commissioners had erroneously told him he could not receive a pension while he was receiving workmen's compensation. *Baird* v. *City of Fresno*, 97 Cal.App.2d 336 [217 P.2d 681], is particularly applicable. It was there held that the city was estopped, when a pension was claimed, to rely on the invalidity of its determination made many years before that its employees should be credited with 9 years of service with the city. Mention is made in some of these cases that where there is general power authorizing action by a governmental body in a particular field, the government may be estopped to assert irregularity in the exercise of that power. Here we have the general power in the department (Gov. Code, § 11152, *supra*) and it has been so recognized by this court (*Nelson* v. *Dean*, 27 Cal.2d 873 [168 P.2d 16, 168 A.L.R. 467]). None of the foregoing authorities presents a clearer case for estoppel than the case at bar.

I would, therefore, affirm the judgment.

SCHAUER, J., Dissenting.—I would affirm the judgment. It is fundamental in California that before a trial court's judgment will be reversed on appeal the appellant must show that there has been error of law resulting in a miscarriage of justice. (Cal. Const., art. VI, § 4½.) I do not find such showing here.

There is no suggestion of fraud or overreaching on the part of either petitioner. Each faithfully discharged the

duties assigned to him and each during the periods of time involved worked many hours in excess of his regular hours of duty. Thus, during the years 1939, 1940, 1941, 1942, and 1943, Mr. Redwine worked a total of 370.75 overtime hours and was allowed 38 hours compensating time off, leaving a net balance of 332.75 compensating hours off due him. During 1941, 1942, and 1943, Mr. Martin performed a total of 568.5 hours of overtime work and was allowed 32.5 hours of compensating time off, leaving a balance due him of 536 compensating time off hours.

During the period when the overtime balance was accruing there appears to have been outstanding a ''Headquarters General Order'' providing either that (Headquarters General Order No. 295) ''Employees ordered to work beyond the hours ordinarily required or hours overtime in addition to what is considered their regular full day's work, may be allowed time off on the day following or at some other convenient time in lieu of the overtime hours worked,'' or that (Headquarters General Order No. 394) ''Employees ordered to work beyond the hours ordinarily required and considered as a full days work may be allowed compensating time off in lieu of such overtime worked.''[1]

It thus appears that employes in the position of petitioners here were entitled to compensating time off to balance their overtime, such compensating time off to be allowed at the convenience of the employe's superior officer. Although (prior to February 6, 1943) there was no statute providing for cash payment in settlement for overtime worked it is quite apparent that the state did expect to balance its accounts with employes for overtime services by allowing an equivalent amount of compensating time off. If the petitioners here had remained in the state service indefinitely and had eventually, at the convenience of their superiors, been allowed the full amount of their overtime as compensating time off I think that neither this litigation nor any based on such allowance would ever have arisen.

---

[1]Headquarters General Order No. 295 was dated September 28, 1939, by its terms became effective October 1, 1939, and superseded Headquarters General Order No. 243, issued July 23, 1936. Headquarters General Order No. 394 was dated August 5, 1942, and superseded No. 295. The substance of Headquarters General Order No. 243 is not shown here (it does appear in the companion case of *Jarvis* v. *Henderson*, *post*, p. 600 [255 P.2d 426]) but there is no contention that it differed materially from Nos. 295 and 394 in respect to the allowance of compensating time off for overtime worked.

However, apparently in recognition of the fact that employes who had accumulated substantial amounts of overtime credits might not be able to remain in their employment long enough to work out a balancing of the account on a compensating time off basis and that there might be a serious question as to the right of the employe to assert, or the state to pay in cash, claims for the value of the overtime which might remain uncompensated upon a separation from service, the State Civil Service Act was amended to cover the situation. Effective February 6, 1943, section 150.5 was added. It provides (Stats. 1943, ch. 20, § 2, p. 136; now Gov. Code, § 18005):

"Upon separation from service without fault on his part, a person is entitled to a lump sum payment as of the time of separation for any unused or accumulated vacation or for any time off to which he is entitled by reason of previous overtime work where compensating time off for overtime work is provided for by the appointing power or by rules of the State Personnel Board.

"Such sum shall be computed by projecting the accumulated time on a calendar basis so that the lump sum will equal the amount which the employee would have been paid had he taken the time off but not separated from the service. Persons separated from service through fault of their own are entitled to a lump sum payment for such compensating time off for overtime work, similarly computed, and in addition, such portion, if any, of unused vacation as the State Personnel Board may determine."

I see no valid objection to applying such section to the petitioners here. Their service extended beyond the effective date of the quoted statute. Up to and at the time of their separation, the trial court was justified in concluding, they had a right to compensating time off. The state could settle that account with them either by permitting them to continue in employment at the prevailing current wage until they had been given compensating time off to fully balance their accumulated overtime or, by virtue of the quoted statute, which we must presume the Legislature found good reason for enacting, it could settle by the "lump sum payment." That the "lump sum payment" was more desirable to the state than having the employe continue on the payroll, occupying a position but on a time off basis until his accumulated overtime was fully offset, is readily understandable. The state may well have needed to fill the position with a person who would be immediately available for work. Upon separation

from the service without fault on their part the petitioners, by virtue of the statute, became entitled to the "lump sum payment." This is no gift of public money; it does not present petitioners with anything of value which they have not earned; it is merely an alternative method of settling a current account which the state has found to be advantageous to it.

Much that is said in my dissent in *Treu* v. *Kirkwood*, * (Cal.) 255 P.2d 409, is equally applicable here.

Since no error of law resulting in miscarriage of justice is shown the judgment should be affirmed.

Respondents' petition for a rehearing was denied April 30, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.

*A rehearing was granted by the Supreme Court on May 1, 1953.