[Sac. No. 6281. In Bank. Apr. 3, 1953.]

L. J. JARVIS, Petitioner and Appellant, v. A. H. HENDERSON, as Director of the Department of Motor Vehicles, etc., et al., Respondents and Appellants.

*A rehearing was granted by the Supreme Court on May 1, 1953.

Earl D. Desmond and George W. Artz for Petitioner and Appellant.

Fred N. Howser and Edmund G. Brown, Attorneys General, and Wilmer W. Morse, Deputy Attorney General for Respondents and Appellants.

EDMONDS, J.—The principal question here, as in *Martin* v. *Henderson* and *Redwine* v. *Henderson, ante,* p. 583 [255 P.2d 416], is whether a former state highway patrol officer is entitled to payment for hours worked prior to February 6, 1943, in excess of regular hours of duty, for which he received no compensating time off during his period of service. An additional question presented is whether such officer may receive payment for work performed before that date on days which normally would have been days off or holidays.

The facts are undisputed. Jarvis entered service with the highway patrol in April, 1931, and was appointed to the civil service position of state traffic officer in March, 1933. In July, 1934, he was assigned to the duties of personal bodyguard and chauffeur for the governor. This assignment terminated in January, 1939, when he returned to the regular duties of a state traffic officer. He resigned from the department on January 31, 1948.

It is stipulated that between January 1, 1935, and December 31, 1938, Jarvis worked 129 days more than would have been required by a six-day work week less all legal holidays. Between January 1, 1935, and August 31, 1939, it is stipulated that he worked 7,682 hours in excess of what would have been required of him had his duties been confined to an eight-hour day. A further stipulation is that his salary was fixed on a monthly basis and was fully paid.

In July, 1944, Jarvis demanded equivalent days off for the claimed 129 extra days of work. On September 1, 1944, the chief of the highway patrol denied his request upon the ground that any right to compensating time off was suspended by Headquarters General Order No. 295. In 1945, he filed an affidavit of his claim for overtime, pursuant to Information Bulletin No. 323 issued by the chief of the highway patrol. This claim was rejected on August 21, 1945, by Headquarters Information Bulletin No. 329 and he never received any compensating time off for such overtime.

The chief of the highway patrol on May 17, 1933, issued Headquarters Information Bulletin No. 52, effective immediately, providing that traffic officers "will take two successive days off every second week." Headquarters General Order No. 243, issued on July 23, 1936, permitted the accumulation of days off under certain circumstances and provided for the allowance of "time off in lieu of overtime." According to the order: "Effective immediately, all days lost and time accumulated previous to January 1, 1936, are cancelled."

Effective October 1, 1939, Headquarters General Order No. 295 canceled Bulletin No. 52 and Order No. 243. It suspended "all accumulative days accumulated prior to January 1, 1939." In addition, it provided: "In the future employees ordered by their superiors to work on their regular days off or legal holidays, will be allowed a day in lieu thereof which will be termed an accumulative day. All accumulative days approved by the immediate superior must be taken as soon thereafter as is practical and at the convenience of the service." It also provided for time off for overtime work. (*Martin* v. *Henderson, supra.*)

Order No. 295 was canceled by Headquarters General Order No. 394, effective August 5, 1942. By the new order: "All days accumulated prior to January 1, 1939 remain suspended." It provided that: "Employees ordered to work on their regular days off or on legal holidays will be allowed a day in lieu thereof which shall be termed an accumulative day. Squad Commanders shall arrange for the taking of accumulative days as rapidly as possible without undue impairment of the service." Provision was also made for time off in lieu of overtime. (*Martin* v. *Henderson, supra.*)

Information Bulletin No. 287 was issued December 9, 1942, in clarification of Order No. 394. It stated that "it is entirely optional with the immediate superior whether compensating time off is allowed and when it shall be taken. If an employee is resigning . . . any overtime MUST BE ALLOWED BEFORE EMPLOYEE WORKS HIS FINAL DAY. . . . There is nothing in the Patrol regulations which establishes a mandatory eight hour day. The determination of what constitutes overtime and if and when compensatory time off shall be taken is to be made by the immediate superior of the individual concerned. . . . Any individual who believes he is being discriminated against has the right to appeal his case through the proper channels to Headquarters."

On September 29, 1943, Headquarters General Order No. 428 canceled Order No. 394. It provided that state traffic officers "shall not receive compensating time off for time worked in excess of their normal work schedule or be permitted to accumulate overtime for such work." Also, when a state traffic officer "is required to work a full shift or longer on a day that he is not normally required to work he shall be allowed a compensating day off. If the compensating day off cannot be granted within ten days without unduly impairing the services of the California Highway Patrol, the employee

shall be permitted to accumulate to his credit such compensating day off, provided that he shall at no time be entitled, without the consent in writing of the Chief of the California Highway Patrol, to a greater total than ten working days."

Order No. 428 was superseded by Headquarters General Order No. 432, permitting the accumulation of days off for work done in addition to a six-day week less legal holidays after November 17, 1943. This order was in turn canceled by Headquarters General Order No. 448 on September 5, 1944, which permitted "compensating time off in lieu of overtime worked, provided that in no event shall it be permissible for any person to accumulate a total greater than 240 uncompensated overtime hours. . . . (Ordinary 'days off' or 'holidays' worked since November 17, 1943, which formerly have been considered as 'accumulative days' under Headquarters General Order No. 432, shall be reduced to overtime hours worked and included in the maximum total of 240 hours)."

On June 5, 1945, the chief of the highway patrol issued Information Bulletin No. 323 requiring proof of any claim for overtime hours accumulated prior to September 29, 1943. Each of the claims presented pursuant to this bulletin was rejected and all overtime hours claimed to have been accumulated prior to September 29, 1943, were canceled by Headquarters Information Bulletin No. 329, issued on August 21, 1945. (*Martin* v. *Henderson, supra.*)

The first statute authorizing payment upon separation for accumulated overtime became effective February 6, 1943. (Stats. 1943, ch. 20, § 2, p. 136; now Gov. Code, § 18005; *Martin* v. *Henderson, supra*). On June 7, 1943, section 73 was added to the State Civil Service Act (Stats. 1937, ch. 753) providing for a "normal work week" to be established by the State Personnel Board for each civil service class and requiring overtime compensation or time off in lieu of overtime. (Stats. 1943, ch. 1041, § 1, pp. 2976-2977; now Gov. Code, §§ 18020-18021, 18023-18024.) Not until September 15, 1945, was there any statute entitling civil servants to time off on designated holidays or to compensation or time off in lieu thereof for holiday work. (Stats. 1945, ch. 1016, p. 1962; Gov. Code, § 18025.)

The trial court found that, during the period Jarvis worked overtime, an eight-hour work day was established as normal for all members of the highway patrol and all time worked beyond that was compensated by equivalent time off as a matter of right. The understanding that such time off would be granted

was, the trial court found, "a part of the contract of employment entered into by and between the appointing power of the California State Highway Patrol and . . . Jarvis upon his entering the service. . . . (in 1931) and continued to be part of said contract of employment during the term of his employment." It also found, as a part of the contract of employment, an understanding that one day out of every seven, exclusive of holidays, should be a day off as a matter of right and if a traffic officer worked on a day which should have been a day off or holiday, he should be compensated by an equivalent day off. According to the findings, Jarvis was entitled to cash compensation for overtime and extra days for which time off had not been granted at the rate of pay he was earning at the time the overtime and extra days were worked. The court found that no cause of action arose to enforce compensating time off for such hours and days until separation from service and no statute of limitation barred the present proceeding. It concluded that Jarvis' claims for cash payment for overtime hours and extra days should be allowed.

After the court made its minute order that judgment be for Jarvis as prayed, he moved for leave to amend his petition to claim recovery upon the basis of $325 per month, the salary he was receiving at the time of his resignation. He also moved to set aside submission of the cause for the purpose of producing evidence in support of the proposed amendments. Following the denial of these motions, judgment was entered directing a peremptory writ of mandate to issue requiring the approval and payment of Jarvis' claims in the amount of $7,225.82 for overtime and $788.90 for extra days worked. The respondents' motions for a new trial and to vacate the judgment and enter judgment in their favor in conformity with the findings were denied. Both Jarvis and the respondents appealed from the judgment. The respondents also appealed from the order denying their motion to vacate the judgment and enter judgment in their favor.

The respondents contend that Jarvis was paid a monthly salary which, by statute, constituted compensation in full for all services which might be rendered by him and no compensation for overtime work or work on normal days off or holidays could be allowed in the absence of statute. They also argue that his claim is barred by the statute of limitations. In addition, they assert that Jarvis cannot be paid from funds of the highway patrol for work done as bodyguard and chauffeur, a position in the governor's office and not in the patrol.

Jarvis, on the other hand, contends that his appointment was contractual, a condition of the contract being payment for overtime and work done on normal days off and holidays. He also argues that section 18005 of the Government Code operates retroactively to grant him compensation for such work. According to him, his cause of action is not barred by a statute of limitations and his position at all times was one within the highway patrol for which its funds are obligated. In support of his appeal, he contends that the trial court abused its discretion in denying his motion to amend the petition and that the judgment fails to conform to the statutory method of computing the lump sum payment for accumulated overtime and days off.

■ The contention that Jarvis' appointment was contractual is without merit. It is based upon the assumption that he was appointed in 1931 by the board of supervisors of his county, pursuant to section 30 of the California Vehicle Act of 1923. (Stats. 1923, ch. 266, § 30, p. 520.) However, prior to his appointment, the statute had been amended to provide for appointment of traffic officers by the chief of the patrol with salaries fixed by the Director of Public Works and to bring all appointees within civil service status. (Stats. 1929, ch. 308, § 1, pp. 617-619.) The amendment eliminated the prior provision for appointment by contract between the chief of the division and the board of supervisors.

No statute or rule of the appointing authority authorized payment for either overtime or work on normal days off or holidays at any time prior to or during the period for which compensation is being claimed. Even had there been such rule or understanding affecting members of the highway patrol, it would have been unenforceable. ■ The salary of a civil service employee is fixed by statute and rule of the State Personnel Board, and may not be altered by contract. (*Martin* v. *Henderson, supra*; *Boren* v. *State Personnel Board*, 37 Cal. 2d 634, 641 [234 P.2d 981].) ■ In the absence of a statute specifically authorizing compensation in addition to a fixed monthly salary, there is no right to payment for overtime. (*Martin* v. *Henderson, supra*.) ■ When the salary is fixed by time, as by the day or month, the employee is bound, in the absence of statute, to render services without regard to the number of hours worked. (*Robinson* v. *Dunn*, 77 Cal. 473 [19 P. 878, 11 Am.St.Rep. 297].) The rule is equally applicable to work performed upon what otherwise would have been days off or holidays. ■ If time off is not granted

by statute (*cf. Pohlc* v. *Christian*, 21 Cal.2d 83, 90 [130 P.2d 417]), it is then included within the period for which the employee is being paid his salary and is time when he may be required to perform services.

■ The statutes enacted in 1943 providing for a normal work week and payment for overtime (Stats. 1943, chs. 20, p. 1041; now Gov. Code, §§ 18005, 18020-18021, 18023-18024) and in 1945 allowing time off on holidays or compensation therefor (Stats. 1945, ch. 1016, p. 1962; Gov. Code, § 18025) were not, and could not be, retroactive. (Const., art. IV, § 32; *Martin* v. *Henderson, supra*; *Robinson* v. *Dunn, supra*, p. 475.) ■ Because, at the time Jarvis did the work specified in his claim, there was no statute permitting additional compensation for services required to be performed at the monthly salary fixed for his position, he may not recover.

These conclusions make it unnecessary to consider the other contentions of the parties.

The judgment and the order denying the motion to vacate the judgment are reversed with directions to the superior court to grant the motion and enter judgment denying the petition for a writ of mandate.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

This case presents the same questions involved in *Martin* v. *Henderson* and *Redwine* v. *Henderson, ante,* p. 583 [255 P.2d 416], and for the reasons stated in my dissenting opinion therein, I cannot agree with the majority here.

The judgment of the trial court awarding the state employee compensation for overtime should be affirmed.

SCHAUER, J.—Dissenting.

The legal issues here are basically the same as, or similar to, those considered in *Martin* v. *Henderson, ante,* p. 583 [255 P.2d 416]. For the reasons stated in my dissent in the Martin case, I would affirm the judgment.