STATE of Alaska, Appellant,

v.

Harold A. BOGENRIFE, Appellee.

No. 1665.

Supreme Court of Alaska.

Aug. 3, 1973.

————◆————

Timothy G. Middleton, Asst. Atty. Gen., Anchorage, John E. Havelock, Atty. Gen., Juneau, for appellant.

Warren C. Colver, Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

RABINOWITZ, Chief Justice.

This appeal raises questions concerning a former state employee's right to payment for work in excess of regular hours of duty and for days which ordinarily would have been days off or holidays.

From October 17, 1968 until September 19, 1969, the Alaska Department of Fish and Game employed appellee Harold Bogenrife as a dual engine aircraft pilot. A few months after being discharged from this position, appellee brought a contract action against the State of Alaska to recover one and one-half times his normal rate of pay for 526 hours of overtime worked. Bogenrife alleged and the trial court found that his scheduled work week contemplated 37½ hours. Appellee testified that John Klingbeil, Aircraft Supervisor for the Department of Fish and Game and his hiring supervisor, informed him at the beginning of his employment that the job involved many overtime hours and required him to fly whenever weather permitted. Bogenrife also stated that while Klingbeil never promised cash payment for overtime work, he did promise overtime compensation in the form of extra time off without deduction from his salary, or compensatory time off at the end of the commercial fishing season.[1] Klingbeil admitted stating to Bogenrife that he would try to give him some time off. Appellee actually received time off prior to his discharge from employment. On the other hand, Bogenrife's own log book reflected that he had not received any compensation time or extra cash payment for 526 overtime hours worked at the Department of Fish and Game's request.

The superior court found in favor of Bogenrife and ordered the state to pay $5,912.15 plus interest from the date of his discharge for the hours of overtime worked by Bogenrife. Basing its decision on a theory of implied-in-fact contract, the trial court reasoned that the Department impliedly promised to pay appellee for his efforts when it requested him to work overtime.

The state now brings this appeal from the superior court's judgment. The statutory and regulatory framework governing compensation of Alaska State employees is as follows: the State Personnel Act[2] and Personnel Rules adopted under the Act determine the right of an employee in the classified service to payment for overtime work.[3] The Personnel Act established the position of personnel director and empowered him, together with the personnel board, to promulgate rules necessary to implement and administer the Act.[4] AS 39.-25.150(2) specifically directs that the personnel rules provide for "the preparation, maintenance, revision, and administration by the director of personnel of a pay plan for all positions in the classified and partially exempt services . . . ." Moreover, AS 39.25.150(2) provides that

> after the pay plan is put into effect, no salary or wage payment may be made to a state employee covered by the pay plan *unless the payment is in accordance with this chapter and the rules adopted under this chapter* . . . (Emphasis added.)

The pay plan which was promulgated classifies employees hired on a monthly basis, such as appellee, according to salary

---

1. The fishing season was a heavy work period for Bogenrife, since he was assigned to patrol the waters for commercial fishing law violations.

2. *See* AS 39.25.010–39.25.220 for full text of the 1960 State Personnel Act.

3. AS 39.25.100 defines "classified service" as "all positions in the state service not included in the exempt service or in the

partially exempt service." There is no dispute that appellee was a member of the classified service receiving at the time of his discharge $1,219 per month.

4. *See* AS 39.25.050 and AS 39.25.140. *See also* Whaley v. State, 438 P.2d 718 (Alaska 1968) ; Mueller v. Alaska State Bd. of Personnel, 425 P.2d 145 (Alaska 1967).

range and step and assigns them fixed monthly salaries.[5]

According to Personnel Rule 9 02.31, [t]he salary paid to an employee in the classified service . . . shall represent the total remuneration for the employee, exclusive of reimbursement for official travel. *Except as otherwise provided in these Rules or upon prior approval by the Director, no employee shall receive pay from the State in addition to the salary authorized under the schedule provided in the pay plan for services rendered by him in the discharge of . . . any additional duties which may be assigned to him . . . .* (Emphasis added.)

Personnel Rule 7 05 provides for payment of overtime work; but first its requirements must be satisfied. Policies and Regulations prescribed by the Commissioner of Administration pursuant to Rule 7 05.2 define the circumstances under which overtime may be authorized.[6] Personnel Rule 7 05.3 imposes a condition precedent to the state's obligation to pay overtime wages, providing that

[h]ours worked in excess of the scheduled hours of work . . . shall be considered overtime hours for pay pur-

5. *See* AS 39.27.010–39.27.045 for current pay plan provisions.

6. During appellee's employment with the Fish and Game Department, the policies and regulations contemplated by Personnel Rule 7 05.2 provided in part:

1. *Policy*: It is the policy of the State of Alaska to plan and schedule work to avoid overtime. Each department head is responsible for such planning for his department to avoid or minimize overtime work.

Overtime is to be authorized only when:

(a) An emergency condition exists where overtime work is necessary for the protection of life and property.

(b) Peak workloads occur over relative short periods of time each month, and such work cannot be rescheduled or performed by available personnel during the regular work day or work week.

(c) Projects are in isolated locations wherein the authorization of overtime will effect substantial savings to the State by reducing transportation and other similar costs peculiar to such isolated locations.

(d) Overtime is mandatory to complete work necessary to meet seasonal or other deadlines established by a department head, and additional personnel cannot be recruited or the amount of work to be performed is insufficient to merit such recruiting or employment of additional personnel.

(e) Overtime is mandatory to provide engineering and/or inspection services on construction projects where contractors are working in excess of the normal work day or work week, and it is not feasible to schedule additional State personnel to provide such services.

Overtime will not be authorized for division directors and other management personnel. The nature of the responsibilities and duties of the personnel in these positions are such that they are expected to devote as much time as necessary to perform their duties. In no case will overtime be authorized for positions above Range No. 19 unless approved in writing, in advance, by the Commissioner of Administration.

2. *Regulations*: Overtime is to be authorized and paid under the following regulations:

(a) The department head or his designated representative shall approve all overtime in writing in advance of the performance of the work, except bona fide emergency work. Approval of emergency overtime work shall be confirmed in writing immediately following the emergency. If the department head decides to delegate his authority a copy of the delegation shall be filed at time of issuance with the Commissioner of Administration.

(b) A record of all overtime authorizations shall be maintained by each department. Such record shall reflect the reason for each overtime authorization. These records will be subject to audit.

(c) Overtime shall not be authorized or paid unless sufficient funds are available for payment thereof in the allocation for personal services.

Department heads shall be responsible for establishing internal controls and procedures necessary for their respective departments, and are responsible for carrying out the policy and regulations prescribed in this memorandum.

poses, *provided that overtime shall not be paid unless authorized in writing by the appointing authority.*[7] (Emphasis added.)

■ Thus, the State Personnel Act and the applicable regulations adopted thereunder do not entitle an employee in the classified service, who is paid a fixed monthly salary, to receive any compensation for overtime, either in the form of cash or compensatory leave time unless: he is a member of the class eligible to receive overtime payment under Personnel Rule 7 05.2; he has worked hours in excess of his scheduled hours; and his appointing authority has authorized in writing payment for such overtime work. Even if these conditions are satisfied, Personnel Rule 9 04 stipulates that the employee is entitled to overtime pay only at his hourly rate.

■ During his entire period of employment with the Department of Fish and Game, Bogenrife was a member of the classified service receiving a fixed monthly salary. No one in the Department promised him cash payment for overtime work. His appointing authority, the Administrative Director of the Department, did not execute a written authorization for the payment of overtime to him. Nor does Bogenrife claim that he has a statutory or regulatory basis for his claim. Instead, he argues that statutory authority is not essential to permit his recovery, and that his supervisor's unfulfilled promise to give him compensatory time off justifies cash payment for overtime.

■ In other jurisdictions it is well established that a public employee is not entitled to payment for overtime, in the absence of a valid contract executed pursuant to statutes or regulations specifically authorizing such compensation in addition to the employee's fixed monthly salary.[8] These jurisdictions take the view that a public employee undertakes to perform the duties of his position, whether these duties, or the hours necessary to perform them, are increased or decreased.[9] Thus, when a public servant is paid by time, for example by the month, rather than by the quantity of work performed, he is expected to perform his duties without extra compensation for overtime or holiday hours worked.[10] We think Alaska Personnel Act and Personnel Regulations set forth above are reflective of this widely accepted policy, and we therefore are guided by this policy in resolving the issues in this appeal.

■ The necessity for smooth labor relations and productive employees counsels the state to require only reasonable hours of work. Indicating his recognition of this pragmatic consideration, Klingbeil promised to give compensatory time off to Bogenrife. Nevertheless, it is significant that during appellee's employment, no statute or regulations permitted such compensatory time off in the absence of compliance with Personnel Rule 7 05. Therefore, such

7. AS 39.25.020 provides that the governor is the appointing authority for all officers and employees of the executive branch, but that such authority may be delegated. The appointing authority for the Department of Fish and Game has been delegated to the administrative director of that department. At the times relevant to this case Klingbeil did not hold the position of Administrative Director of the Department of Fish and Game.

8. *See, e. g.,* Treu v. Kirkwood, 42 Cal.2d 602, 268 P.2d 482, 487 (1954); Jarvis v. Henderson, 40 Cal.2d 600, 255 P.2d 426, 430 (1953); Amelotte v. City of Worcester, 343 Mass. 155, 177 N.E.2d 775 (1961); Grossman v. City of New York, 71 Misc.2d 234, 335 N.Y.S.2d 890 (App.Div.1972); State ex rel. Beck v. Carter, 2 Wash.App. 974, 471 P.2d 127, 130 (1970); *see also* 3 C. Antieau, Municipal Corporation Law § 22.14, at 280 (1955); 4 E. McQuillin, The Law of Municipal Corporations § 12.194(a), at 84 (3d ed. 1968).

9. As noted by the California Supreme Court, "[W]henever he considers the compensation inadequate he is at liberty to resign." Martin v. Henderson, 40 Cal. 2d 583, 255 P.2d 416, 420 (1953).

10. *See, e. g.,* Jarvis v. Henderson, 40 Cal. 2d 600, 255 P.2d 426, 430 (1953).

compensatory time off as Bogenrife actually received was not received as of right. Moreover, the establishment of normal working hours and provision for compensatory time off for work beyond those hours do not, of themselves, give the employee a right to payment for overtime.[11] Thus, we conclude that the superior court's judgment in favor of appellee must be reversed because he was never promised cash payment for overtime and because his appointng authority never authorized payment for his extra work as required by Personnel Rule 7 05.3.[12]

Nor can the requirement of an express written authorization for payment for overtime be circumvented by the implied contract theory used by the trial court. This theory of implied contract finds little support in pertinent decisions.[13] Additionally, we find that an implied contract theory is inapplicable to the circumstances of the case at bar. AS 39.25.150(a) and Personnel Rule 7 05 prescribe the only manner in which the state may become obligated to pay for overtime performed by a classified service employee. This regulatory scheme centralizes decision-making power, with respect to overtime, in the appointing authority who presumably has a broad view of the Department's needs and is shielded from dangers of favoritism by his distance from the particular employee. Thus, the Personnel Act and Personnel Rules attempt to ensure the state and its taxpayers that public funds will be spent in their most efficient manner. We are unwilling to frustrate this policy by permitting local supervisors, such as Klingbeil, to obligate the state to pay extra wages, simply by his requesting overtime work and promising compensatory time off.[14] Moreover, Bogenrife testified that Klingbeil promised him compensatory time off, not cash, for his overtime work. These circumstances do not warrant a conclusion that appellee Bogenrife understood Klingbeil's request for overtime work as implying a promise to pay wages for such labor.

Reversed.

---

11. *E. g.*, Simpson v. Cranston, 56 Cal.2d 63, 13 Cal.Rptr. 668, 362 P.2d 492, 493 (1961) ; Zehenni v. City of Akron, 19 Ohio Misc. 11, 250 N.E.2d 630 (Comm. Pl.Ct.1968) ; 3 C. Antieau, Municipal Corporation Law § 22.14, at 280 (1955).

12. Recovery of overtime has been denied because the extra services were not properly authorized as required by law. *See, e. g.*, Sorensen v. City of New York, 202 F.2d 857, 859 (2d Cir. 1953), cert. denied, 347 U.S. 951, 74 S.Ct. 674, 98 L.Ed. 1097 (1954) ; Amelotte v. City of Worcester, 343 Mass. 155, 177 N.E.2d 775, 778 (1961).

13. *See* 4 E. McQuillin, The Law of Municipal Corporations § 12.175, at 13–14 (3d ed. 1968) ; *e. g.*, Zehenni v. City of Akron, 19 Ohio Misc. 11, 250 N.E.2d 630, 631–632 (Comm.Pl.Ct.1968) (rejecting implied contract argument in suit for overtime compensation by public employee).

The trial court's implied contract theory should be distinguished from that involving quasi-contracts. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performance in question, nor are they promises. They are obligations created by law for reasons of justice. And, unlike implied contracts which measure relief by whatever contractual terms exist, quasi-contracts measure relief by the value of benefits conferred. *See* Restatement of Contracts § 5, comment a at 7 (1932) ; *e. g.*, Nordin v. City of Nome, 489 P.2d 455, 464 n. 9 (Alaska 1971).

The facts of the case at bar and the issues presented in this appeal do not require us to pass upon the question of what remedies by way of suit Bogenrife has against Klingbeil in his individual capacity.

14. *See, e. g.*, In the Matter of the Application of Clem Harrison Stephenson, 511 P.2d 136 (Alaska 1973) ; Whaley v. State, 438 P.2d 718, 720 (Alaska 1968).